■ JOHN W. TABNER et al., Doing Business as TABNER, RYAN & KENIRY, Respondents-Appellants, v RALPH H. DRAKE, JR., et al., Appellants-Respondents. [780 NYS2d 85]—

Spain, J. (1) Cross appeals from an order of the Supreme Court (Ceresia, Jr., J.), entered July 14, 2000 in Albany County, which, inter alia, partially granted plaintiffs' motion for summary judgment, and (2) appeal from an order of said court (Ferradino, J.), entered October 13, 2000 in Albany County, which, inter alia, granted plaintiffs' motion to dismiss defendants' counterclaims.

Plaintiffs commenced this action to recover legal fees for services allegedly rendered to defendant Ralph H. Drake, Jr. in connection with his residential and commercial real estate business—defendant RHD Construction Corporation. Defendants answered, asserting counterclaims sounding in malpractice and breach of contract. Plaintiffs moved for summary judgment, as-

serting that they had established an account stated as a matter of law entitling them to their fees, and sought dismissal of the counterclaims. Defendants cross-moved for summary judgment on the counterclaims. By order entered July 14, 2000, Supreme Court (Ceresia, Jr., J.) granted plaintiffs summary judgment on the account stated issue but denied their motion dismissing the counterclaims as well as defendants' cross motion for summary judgment on the counterclaims. Defendants appeal only the grant of summary judgment on the account stated issue and plaintiffs cross-appeal from the denial of their motion for summary judgment dismissing the counterclaims.

On the eve of trial, plaintiffs moved to dismiss the counterclaims on the basis that Supreme Court's July 14, 2000 order granting summary judgment on plaintiffs' account stated cause of action barred litigation of defendants' counterclaims for legal malpractice. On October 13, 2000, Supreme Court (Ferradino, J.), granted the motion and dismissed the counterclaims. Defendants now appeal from the October 13, 2000 order as well.

The pertinent facts underlying this lawsuit are primarily related to plaintiffs' alleged representation of defendants in four transactions which occurred between January 1992 and September 1995 in which Edward Cammarota, a private lender, loaned defendants amounts ranging between $105,000 and $408,000. Cammarota is a client of plaintiffs and it is not disputed that plaintiffs represented him in all four loan transactions. In the counterclaims, defendants essentially allege that plaintiffs simultaneously represented Drake as well as Cammarota in these transactions—without discussing the potential conflict of interest or gaining consent thereto—and zealously advanced Cammarota's interests to Drake's detriment, causing him to sustain actual and ascertainable financial damage.

Defendants allege that when Drake needed to borrow money for his business in or about 1991, plaintiffs—who had previously provided legal services to Drake—suggested borrowing money from Cammarota, with whom plaintiffs enjoyed a long-standing attorney-client relationship. A loan from Cammarota to Drake for $150,000 was then negotiated which required Drake—who alleges that he was represented and advised by plaintiffs concerning the terms of the transaction—to encumber all of his real property valued at over $750,000 as collateral. Defendants assert that the over-collateralization and Cammarota's subsequent refusal—allegedly on plaintiffs' advice—to release the property from the mortgage caused Drake to lose a $690,000 municipal construction contract with the Village of Colonie, Albany County, as well as several other business op-

portunities. According to defendants, plaintiffs arranged the second loan with Cammarota by which Cammarota loaned $105,000 to RHD and required Drake's wife to sign a personal guarantee. Defendants allege that Drake was billed by plaintiffs for services provided in relation to these transactions.

In contrast, plaintiffs state that they did not represent Drake in either of these first two loan transactions but, instead, orally advised him that they were representing Cammarota and that Drake should retain other counsel if he required legal advice. The bills paid by Drake in relation to these transactions, according to plaintiffs, merely reflected the borrower's obligation to pay the lender's legal expenses.

Another loan was made in 1994, this time in connection with a business venture by Drake and another individual, Pasquale Ferracane; Cammarota provided $408,000 for Drake and Ferracane to acquire land slated for development known as the Woodfield subdivision in the Town of Malta, Saratoga County, and took a mortgage on a portion of the property. The final loan relevant to this appeal was also made in connection with the Woodfield subdivision. Cammarota loaned Drake $156,000 in 1995 to enable Drake to buy out Ferracane's interest in the property (the 1994 and 1995 loans are hereinafter referred to as the Woodfield loans).

At some point thereafter, the Woodfield project began to experience serious financial problems. Drake claims that, during this period, he had offers to purchase the subdivision, but such offers required that the subdivision be sold on a lot-by-lot basis to the residential customer, requiring Cammarota to release the lots individually from the mortgage as they were sold, an arrangement which Cammarota allegedly refused. When Drake attempted to borrow additional funds to develop the property from a commercial lender, he could not because Cammarota—again, allegedly on plaintiffs' advice—refused to subordinate his interests in the subdivision. Drake alleges that he considered declaring bankruptcy but, acting on plaintiffs' advice, did not. Eventually, Drake sold the Woodfield subdivision at $27,000 per lot, rather than the $40,000 stipulated in previous offers. The sale required Cammarota to subordinate a portion of his mortgage to a commercial lender. This time Cammarota agreed, allegedly because of a separate deal that he—with plaintiffs' assistance—was negotiating with the purchaser. Drake alleges that plaintiffs deferred his interests to that of Cammarota in negotiating the Woodfield sale.

Plaintiffs offer a counter version of the events surrounding the Woodfield loans. They do not deny that they represented

Drake in these transactions, but allege that they advised him not to take the $408,000 loan but instead to abandon the project or seek funds from a commercial lender. Plaintiffs also asserted that they took no part in negotiating the terms of the Woodfield loans but merely drew up the necessary documents in accordance with the terms agreed upon by their clients. In sharp contrast to Drake's assertions, plaintiffs allege that they attempted to discuss bankruptcy as an option with Drake a number of times but it was Drake who refused to consider it.

Beginning with plaintiffs' contentions on appeal from the July 14, 2000 order, we find that Supreme Court (Ceresia, Jr., J.) correctly concluded that material issues of fact exist which preclude summary judgment in favor of plaintiffs dismissing defendants' legal malpractice counterclaims (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Costley v Martin*, 309 AD2d 1124, 1125 [2003]). To establish a claim for legal malpractice, it was necessary for defendants to establish the existence of an attorney-client relationship at the time of the alleged malpractice (*see Hansen v Caffry*, 280 AD2d 704, 705 [2001], *lv denied* 97 NY2d 603 [2001]), and that " 'the attorney was negligent, that the negligence was a proximate cause of the loss sustained and that plaintiff suffered actual and ascertainable damages' " (*Ehlinger v Ruberti, Girvin & Ferlazzo*, 304 AD2d 925, 926 [2003], quoting *Busino v Meachem*, 270 AD2d 606, 609 [2000]; *see Miszko v Leeds & Morelli*, 3 AD3d 726, 726-727 [2004]).

As the proponent of summary judgment,* it was plaintiffs' burden to establish that defendants are unable to prove at least one of these elements (*see Ehlinger v Ruberti, Girvin & Ferlazzo, supra* at 926). Plaintiffs argue that they cannot be charged with malpractice with respect to the first two loans because they have established, as a matter of law, that they did not represent defendants in those transactions. We disagree. Drake's assertions that plaintiffs agreed to represent him in connection with these loans—an assertion corroborated to a certain extent by the testimony of Cammarota—and that plaintiffs negotiated the terms thereof on his behalf, combined with evidence that plaintiffs billed Drake for services during the relevant time period, are sufficient to raise a triable issue of fact on the question of whether plaintiffs represented defendants.

Having failed to establish lack of representation as a matter

---

* Inasmuch as defendants did not appeal from that portion of the July 14, 2000 order denying their cross motion for summary judgment, we do not address their arguments on appeal that summary judgment should have been granted to them on their counterclaims.

of law, to succeed on their motion for summary judgment on defendants' malpractice counterclaims plaintiffs either had to demonstrate the absence of any negligence on their part—i.e., show that they exercised "the reasonable skill and knowledge commonly possessed by a member of the legal profession" (*Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303-304 [2001])—or demonstrate that any negligence on their part was not the cause of any actual or ascertainable damage to defendants (*see id.*; *Bassim v Halliday*, 234 AD2d 628, 629-630 [1996], *appeal dismissed* 89 NY2d 1001 [1997], *lv dismissed and denied* 90 NY2d 839 [1997]). As Supreme Court correctly noted, absent from the record evidence is any professional or expert opinion describing the standards of professional care and skill which plaintiffs may have owed to defendants and indicating whether such standards have been breached on the facts presented. At a minimum, a question of fact exists regarding whether plaintiffs breached the standards regarding conflicts of interest caused by simultaneous representation as set forth in Code of Professional Responsibility DR 5-105 (c) (22 NYCRR 1200.24 [c]) in that the parties dispute whether plaintiffs ever expressly disclosed their representation of Cammarota to Drake and obtained his consent (*see* DR 5-105 [22 NYCRR 1200.24]). Although plaintiffs correctly assert that a violation of a disciplinary rule does not in and of itself amount to actionable negligence on the part of an attorney (*see Mills v Pappas*, 174 AD2d 780, 782 [1991], *appeal dismissed* 78 NY2d 1121 [1991], *cert denied* 504 US 971 [1992]), liability can follow where the client can show that he or she suffered actual damage as a result of the conflict (*see Ehlinger v Ruberti, Girvin & Ferlazzo*, 304 AD2d 925, 926 [2003], *supra*).

Here, Drake has alleged specific instances where plaintiffs advised him in a manner that operated to his detriment and to Cammarota's benefit—to the point of inflicting actual and ascertainable damages. In fact, the record is replete with factual disputes which might impact upon the question of whether injuries suffered by defendants were caused by any breach of a duty owed them by plaintiffs. The parties dispute whether plaintiffs negotiated any of the loan terms on defendants' behalf, whether Drake's injuries were solely the result of undercapitalization and excessive indebtedness rather than any misguided legal advice on the part of plaintiffs, and the content of any bankruptcy advice that plaintiffs may or may not have rendered to Drake. Given the sharply contrasting versions of events, we find that triable issues of fact exist which preclude summary judgment in favor of plaintiffs on the issue of legal malpractice (*see id.* at 926-927; *Couch White v Kelly*, 286 AD2d 526, 528 [2001]; *Lowe v Spada*, 282 AD2d 815, 817-818 [2001]).

We agree, however, with plaintiffs' contention that their motion for summary judgment dismissing defendants' breach of contract counterclaim should have been granted by the July 14, 2000 order. That cause of action, as pleaded in the complaint, is identical to defendants' malpractice cause of action; no additional promise or duty on the part of plaintiffs is alleged which would extend beyond the fiduciary duty an attorney owes his or her client. Accordingly, the breach of contract claim is "merely a redundant pleading of the malpractice claim" and should be dismissed (*Miszko v Leeds & Morelli, supra* at 727; *see Cherry v Decker*, 280 AD2d 867, 868 [2001]; *Iazzetta v Vicenzi*, 200 AD2d 209, 214 [1994], *lv dismissed* 85 NY2d 857 [1995]).

Next, we find merit in defendants' contention that plaintiffs were not entitled to summary judgment on their account stated claim. A nonfrivolous claim of legal malpractice is, by nature, "inextricably intertwined" with a claim for fees for the same representation claimed to have been deficient (*Couch White v Kelly, supra* at 528; *see Ingalsbe v Mueller*, 257 AD2d 894, 895 [1999]; *cf. Hussey v Leggio Agency*, 299 AD2d 690, 691-692 [2002]; *Morrison Cohen Singer & Weinstein v Ackerman*, 280 AD2d 355, 356-357 [2001]). Because defendants have "shown the existence of a triable issue of fact with respect to a bona fide defense" to plaintiffs' claims to legal fees, it is premature to grant plaintiffs summary judgment on their account stated cause of action (*Lavelle v Urbach, Kahn & Werlin*, 198 AD2d 751, 752 [1993]; *see Reiser, Inc. v Roberts Real Estate*, 292 AD2d 726, 729 [2002]; *Eurotech Dev. v Adirondack Pennysaver*, 224 AD2d 738, 739 [1996]).

Given our conclusion that plaintiffs should not have been awarded summary judgment on the account stated issue, the order of Supreme Court (Ferradino, J.) dismissing defendants' malpractice counterclaims—which were premised on that award of summary judgment—must be modified accordingly. In addition, that portion of plaintiffs' appeal seeking a grant of their motion to dismiss the breach of contract counterclaim has been rendered academic by our conclusion that such claim should have been dismissed by the July 14, 2000 order.

Peters, J.P., Carpinello and Kane, JJ., concur. Ordered that the order entered July 14, 2000 is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' motion for summary judgment on their account stated claim and as denied plaintiffs' motion for summary judgment dismissing defendants' breach of contract counterclaim; plaintiffs' motion granting summary judgment on their account stated claim denied, plaintiffs' motion dismissing defendants' breach of

contract counterclaim granted; and, as so modified, affirmed. Ordered that the order entered October 13, 2000 is modified, by reversing so much thereof as granted plaintiffs' motion to dismiss defendants' malpractice counterclaims; motion denied to that extent; and, as so modified, affirmed.

