■ LAW OFFICES OF IRA H. LEIBOWITZ et al., Respondents-Appellants, v LANDMARK VENTURES, INC., Appellant-Respondent. [15 NYS3d 814]—

In an action to recover legal fees, the defendant appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Suffolk County (Rebolini, J.), entered October 18, 2012, as, upon an order of the same court dated October 1, 2012, inter alia, granting those branches of the plaintiffs' motion which were for summary judgment on the cause of action alleging breach of contract and pursuant to CPLR 3211 (a) (7) to dismiss its counterclaim, is in favor of the plaintiffs and against it in the principal sum of $14,536.33, and, in effect, dismissed

its counterclaim, and the plaintiffs cross-appeal from so much of the same judgment as failed to award them an attorney's fee or to impose a sanction upon the defendant pursuant to 22 NYCRR 130-1.1.

Ordered that the judgment is affirmed, with costs to the plaintiffs.

The plaintiffs, Ira H. Leibowitz and his law offices, commenced this action to recover legal fees for services rendered on behalf of the defendant, Landmark Ventures, Inc. (hereinafter Landmark), in connection with two separate matters. The plaintiffs' services on each matter were rendered pursuant to separate retainer agreements for each matter.

The Supreme Court properly granted that branch of the plaintiffs' motion which was for summary judgment on the cause of action alleging breach of contract. "Construction of an unambiguous contract is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms" (*Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]; *see Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]; *A. Gugliotta Dev., Inc. v First Am. Tit. Ins. Co. of N.Y.*, 112 AD3d 559, 560 [2013]). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (*Kasowitz, Benson, Torres & Friedman, LLP v Duane Reade*, 98 AD3d 403, 406 [2012], *affd* 20 NY3d 1082 [2013], quoting *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]).

Here, the plaintiffs established, prima facie, their entitlement to judgment as a matter of law on the cause of action alleging breach of contract by submitting certain email exchanges between the parties, which demonstrated, "[b]y the plain language employed," that the plaintiffs made an offer to represent Landmark in each matter for a certain fee, and that Landmark accepted that offer (*Kasowitz, Benson, Torres & Friedman, LLP v Duane Reade*, 98 AD3d at 405). In one matter, the parties agreed that the plaintiffs would represent Landmark at a rate of $350 per hour. The invoices documenting the number of hours worked and the amount of disbursements paid out demonstrated, prima facie, the plaintiffs' entitlement to legal fees in the sum of $4,760 in connection with the services rendered for that matter. In the second matter, the agreement was for an initial retainer fee of $5,000, plus a 25% contingency fee with respect to any sums that

Landmark ultimately recovered in that matter. Since it is undisputed that, shortly after the commencement of an action in connection with the second matter, Landmark entered into a stipulation of settlement whereby Landmark recovered $40,000, the plaintiffs established, prima facie, entitlement to their full fee of $5,000 plus a contingency fee of 25% of $40,000.

In opposition, Landmark failed to raise a triable issue of fact.

Landmark's counterclaim, which alleged tortious interference with contract and tortious interference with prospective business relations, was premised upon the plaintiffs' alleged contact with the third party with whom Landmark had entered into the stipulation of settlement in connection with the second matter. Specifically, Landmark alleged that, contrary to the terms of the stipulation, the plaintiffs requested that certain of the agreed-upon payments be made directly to them as Landmark's counsel, rather than to Landmark. The ostensible purpose of this communication was to ensure that the plaintiffs would be able to deduct their legal fees from the settlement funds.

The Supreme Court properly granted that branch of the plaintiffs' motion which was pursuant to CPLR 3211 (a) (7) to dismiss so much of the counterclaim as alleged tortious interference with contract. A necessary element of such cause of action is the intentional and improper procurement of a breach and damages (*see White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 426 [2007]). Here, Landmark failed to adequately plead facts that would establish that the plaintiffs, in communicating with the third party to secure their attorney's fees, intentionally procured that party's breach of the stipulation of settlement (*see Dune Deck Owners Corp. v Liggett*, 85 AD3d 1093, 1095 [2011]).

To the extent that the counterclaim sought recovery based on a theory of tortious interference with prospective business relations, the Supreme Court properly granted that branch of the plaintiffs' motion which was pursuant to CPLR 3211 (a) (7) to dismiss that portion of the counterclaim. A claim for tortious interference with prospective business relations does not require a breach of an existing contract, but the party asserting the claim must meet a "more culpable conduct" standard (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]). This standard is met where the interference with prospective business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party (*see Carvel Corp. v Noonan*, 3 NY3d

182, 190 [2004]; *Caprer v Nussbaum*, 36 AD3d 176, 204 [2006]). " 'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191 [1980], quoting Restatement [Second] of Torts §§ 768, Comment *e* and 767, Comment *c*). As a general rule, the offending party's conduct must amount to a crime or an independent tort, as conduct that is neither criminal nor tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective business relations (*Carvel Corp. v Noonan*, 3 NY3d at 190 [internal quotation marks omitted]). The mere violation of an attorney disciplinary rule will only create liability if actual damages are incurred as a result of the violating conduct (*see Tabner v Drake*, 9 AD3d 606, 610 [2004]). In addition, where the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious (*see Out of Box Promotions, LLC v Koschitzki*, 55 AD3d 575, 577 [2008]). Here, contrary to the conclusion of our dissenting colleague, the allegations in the counterclaim do not establish the elements of tortious interference with prospective business relations. The allegations that the plaintiffs contacted a settling party to protect their attorney's fees after having been discharged as Landmark's counsel, while arguably alleging a violation of a disciplinary rule, do not, without more, allege that the plaintiffs' acts constituted a crime, or an independent tort, or that the plaintiffs acted solely for the purpose of harming Landmark (*see Worldcare Intl., Inc. v Kay*, 119 AD3d 554, 556-557 [2014]; *Adler v 20/20 Cos.*, 82 AD3d 915, 918 [2011]).

The parties' remaining contentions are without merit.

Accordingly, we affirm the judgment. Dillon, J.P., Chambers and Hall, JJ., concur.

Duffy, J., concurs in part and dissents in part, and votes to modify the judgment by deleting the provision thereof, in effect, dismissing so much of the counterclaim as alleged tortious interference with prospective business relations, reinstate that portion of the counterclaim, deny that branch of the plaintiffs' motion which was pursuant to CPLR 3211 (a) (7) to dismiss that portion of the counterclaim, modify the order accordingly, and remit the matter to the Supreme Court, Suffolk County, for further proceedings on that portion of the counterclaim, with the following memorandum: I concur with the decision of the majority except to the extent that I would reinstate so much of the defendant's counterclaim as alleged tortious

interference with prospective business relations and remit the matter to the Supreme Court, Suffolk County, for further proceedings on that portion of the counterclaim.

Although the Supreme Court correctly determined that the defendant, Landmark Ventures, Inc. (hereinafter Landmark), failed, in its counterclaim, to state a cause of action for tortious interference with its contract rights under the terms of its settlement agreement relating to the second matter, Landmark's claim for tortious interference with prospective business relations with Landmark's client, a claim which the court did not reach, should have survived that branch of the plaintiffs' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the counterclaim.

In determining a motion to dismiss pursuant to CPLR 3211 (a) (7), "the pleadings are 'to be afforded a liberal construction. [The Court must] accept the facts as alleged in the complaint as true, [and] accord [the nonmovant] the benefit of every possible favorable inference'" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011], quoting *Leon v Martinez*, 84 NY2d 83, 87 [1994]). "In considering a motion to dismiss pursuant to CPLR 3211 (a) (7), the court should, among other things, 'determine only whether the facts as alleged fit within any cognizable legal theory'" (*Micro Tech. Intl., Inc. v Artech Info. Sys., LLC*, 62 AD3d 764, 764 [2009], quoting *Leon v Martinez*, 84 NY2d at 87; *see Pincus v Wells*, 35 AD3d 569, 570 [2006]). Here, the counterclaim interposed by Landmark set forth facts which meet the criteria for establishing the elements of tortious interference with prospective business relations, including the "more culpable conduct" element of that cause of action (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]; *see Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004]; *Caprer v Nussbaum*, 36 AD3d 176, 204 [2006]; *Snyder v Sony Music Entertainment*, 252 AD2d 294, 299-300 [1999]; *see also Lyons v Menoudakos & Menoudakos, P.C.*, 63 AD3d 801, 802 [2009]; *Tabner v Drake*, 9 AD3d 606, 610 [2004]). Landmark alleged, among other things, that the individual plaintiff (hereinafter the plaintiff attorney), Landmark's former counsel, had already been discharged when the plaintiff attorney contacted Landmark's client. Landmark also alleged that the plaintiff attorney directed Landmark's client to make the payments that the client owed to Landmark directly to the plaintiffs "as attorney for Landmark Ventures, Inc.," at a time when the plaintiff attorney no longer represented Landmark.

Although I agree with the majority's position that the plaintiff attorney was motivated by his desire to ensure that he

received the fees he contended that Landmark owed him and that, with such motives, the plaintiff attorney's actions cannot be considered "solely malicious," the majority appears to require that, absent facts alleging that the plaintiffs engaged in conduct with the sole purpose of harming Landmark, Landmark failed to state a cause of action for tortious interference with prospective business relations. To the extent that the majority requires that, in order to avoid dismissal of this claim, Landmark had to set forth facts alleging that the plaintiffs engaged in conduct with the sole purpose of harming Landmark *and* that they did so by means that were unlawful or improper, I disagree. Such an analysis is more rigorous than that applied by the Court of Appeals (*see Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 190-194 [1980]), or by this Court in other decisions (*see Out of Box Promotions, LLC v Koschitzki*, 55 AD3d 575, 577-578 [2008]; *BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am.*, 247 AD2d 565, 568 [1998]; *Nassau Diagnostic Imaging & Radiation Oncology Assoc. v Winthrop-University Hosp.*, 197 AD2d 563, 564 [1993]), in evaluating the sufficiency of a cause of action alleging tortious interference with prospective business relations. To make out a claim for tortious interference with business relations where, as here, the alleged interference was with prospective contractual relationships, rather than existing contracts, the proponent must show that the other party interfered with the proponent's business relationships *either* with the sole purpose of harming the movant *or* by means that were unlawful or improper (*see Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d at 190-194; *see also Out of Box Promotions, LLC v Koschitzki*, 55 AD3d at 577-578; *BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am.*, 247 AD2d at 568; *Nassau Diagnostic Imaging & Radiation Oncology Assoc. v Winthrop-University Hosp.*, 197 AD2d at 564). Thus, I submit that Landmark's allegation that the plaintiff attorney interfered with Landmark's business relationships by means that were unlawful or improper—to wit, that he held himself out as counsel for Landmark when he no longer represented it—was sufficient to withstand that branch of the motion which was to dismiss the counterclaim (*see Out of Box Promotions, LLC v Koschitzki*, 55 AD3d at 577-578).

The Court of Appeals has enunciated a general rule that, to be sufficiently "culpable" to create liability for tortious interference with prospective business relations, the alleged conduct must amount to a crime or an independent tort (*Carvel Corp. v Noonan*, 3 NY3d at 190). However, the Court of Appeals did

not preclude "other instances of conduct which, though not a crime or tort in itself," are so culpable that they could be the basis of such a claim (*id.*). Here, the facts alleged by Landmark, that the plaintiff attorney held himself out to be Landmark's counsel when he no longer represented Landmark, in order to obtain money the plaintiffs contend was owed to him by Landmark, if true, would constitute a breach of fiduciary duty as well as a violation of the ethical rules that govern the conduct of attorneys (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.8 [f] ["A lawyer shall not accept compensation for representing a client, or anything of value related to the lawyer's representation of the client, from one other than the client unless: (1) the client gives informed consent"]; *see generally Matter of Cooperman*, 83 NY2d 465, 472 [1994]).

I also disagree with the majority's assertion that, without a concomitant allegation of actual damages, an allegation that, if true, may constitute a violation of an attorney disciplinary rule cannot meet the culpable conduct element required to plead tortious interference with prospective business relations sufficient to defeat the motion to dismiss in this matter. The analysis adopted by the majority is one applied in the context of determining whether a cause of action for legal malpractice has been established (*see Tabner v Drake*, 9 AD3d at 610), but is not the analysis this Court already has applied in determining the culpable conduct necessary to establish a claim of tortious interference with prospective business relations. In *Lyons v Menoudakos & Menoudakos, P.C.* (63 AD3d at 802), this Court held that an attorney's violation of a disciplinary rule and his professional obligations was sufficient to demonstrate the culpable conduct required for a claim of tortious interference with prospective business relations so as to withstand a motion for summary judgment. In that case, this Court noted that, to constitute "culpable conduct," the conduct must amount to a crime or an independent tort, and may include " '[w]rongful means' " defined as " 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure' " (*id.* at 802, quoting *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d at 191, and citing *Carvel Corp. v Noonan*, 3 NY3d at 190-193, and *Smith v Meridian Tech., Inc.*, 52 AD3d 685, 687 [2008]). In *Lyons*, this Court took note of the various ethical obligations of the defendant in that matter, who had been the attorney for the seller in a real estate transaction and allegedly wished to purchase the property for himself (*see Lyons v Menoudakos & Menoudakos, P.C.*, 63 AD3d at 802). This Court held that "[e]vidence of a violation of a

disciplinary rule is relevant to the question of tort liability," and concluded that the defendant had failed to eliminate all triable issues of fact as to whether his judgment was affected by his personal interest in the transaction and whether he furthered that interest by making misrepresentations to the seller about the creditworthiness of the plaintiff, thereby wrongfully interfering with the prospective transaction (*id.*). Here, as in *Lyons*, the allegations of the plaintiff attorney's violations of his ethical obligations, if true, would meet the culpable conduct element necessary to state a cause of action for tortious interference with prospective business relations.

Because Landmark alleged facts which, if true, could establish the elements of this tort (*see Lyons v Menoudakos & Menoudakos, P.C.*, 63 AD3d at 802; *William Kaufman Org. v Graham & James*, 269 AD2d 171, 173 [2000]), I believe that the Supreme Court should have denied that branch of the plaintiffs' motion which was pursuant to CPLR 3211 (a) (7) to dismiss that portion of counterclaim for failure to state a cause of action.