Urology & Mesh Med. Consulting, PLLC v Rubenstein

2026 NY Slip Op 50792(U)

May 15, 2026

Appellate Term, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Digest-Index Classification: Contracts—Formation of Contract

Urology & Mesh Medical Consulting, PLLC, Respondent,

v

Martin Rubenstein and Law Offices of Howard M. File, Esq., P.C., Appellants.

Supreme Court, Appellate Term, Second Department, 2d, 11th And 13th Judicial Districts

Decided on May 15, 2026

2025-210 RI C

Present: : Wavny Toussaint, P.J., Marina Cora Mundy, Joanne D. QuiÑOnes, JJ

Howard M. File, Esq., P.C. (Howard M. File of counsel), for appellants.
David A. Kaplan, for respondent.

Appeal from a decision of the Civil Court of the City of New York, Richmond County (Mary A. Kavanagh, J.), entered January 15, 2025, deemed from a judgment of that court entered August 6, 2025 (see CPLR 5512 [a]). The judgment, insofar as appealed from as limited by the brief, after a nonjury trial, awarded plaintiff the principal sum of $12,600 against both defendants.

[*1]

ORDERED that the judgment, insofar as appealed from, is affirmed, without costs.

In this action, plaintiff sought to recover the principal sum of $12,600, which is the amount it charged for the preparation of a medical report. At a nonjury trial, it was established that defendant Law Offices of Howard M. File, Esq., P.C. (law firm) had represented a client in a medical malpractice action brought against a surgeon in the Supreme Court, Richmond County (the Supreme Court action). In January 2021, defendant Martin Rubenstein, an attorney who was "of counsel" to defendant law firm, asked plaintiff's principal, Dr. Matthew Karlovsky, for an expert evaluation of the case against the surgeon. Karlovsky prepared a fee schedule which listed, among other things, a $700 hourly fee for "Chart Review & Reporting." Rubenstein signed the fee schedule on January 11, 2021, and, below his signature, printed both his own name and that of defendant law firm. Karlovsky did not sign the fee schedule.

Rubenstein sent Karlovsky a letter, dated January 12, 2021, on the letterhead of defendant law firm, which named Rubenstein as being "of counsel." In that letter, Rubenstein briefly summarized the client's medical history and set forth "our" beliefs, that the surgeon had failed to obtain informed consent from the client and had provided improper medical and surgical care. Rubenstein provided Karlovsky with copies of the client's "medical records and related information for expert review, evaluation, and report." On January 26, 2021, plaintiff sent its [*2]initial invoice, for $6,335, to defendants. This invoice covered Karlovsky's review of certain records and a phone report to Rubenstein. Defendant law firm paid the invoice in a check dated January 29, 2021.

Rubenstein then provided additional materials to Karlovsky, who prepared a written report dated February 11, 2021. The written report included a detailed description of the client's medical history and treatment, and set forth Karlovsky's opinion respecting the claims against the surgeon. Plaintiff's February 12, 2021 invoice for the report preparation and writing had line items setting forth each date Karlovsky worked, the nature of the work performed on such date, and the time Karlovsky had spent on each listed task. Plaintiff billed defendants $12,600, based on the rate set forth on plaintiff's fee schedule. Defendants submitted Karlovsky's February 11, 2021 report to the Supreme Court, in support of their opposition to the surgeon's motion to dismiss the Supreme Court action. Defendants, however, refused to pay plaintiff's invoice, and, at the trial in this action, asserted that, based on their comparison to invoices they had previously paid to experts in other cases, they considered the number of hours for which plaintiff had billed them to be excessive. Defendants also questioned the quality of Karlovsky's work.

Following the trial, insofar as is relevant to this appeal, a judgment was entered on August 6, 2025 in favor of plaintiff in the principal sum of $12,600.

On appeal, defendants assert that the fee schedule did not constitute an enforceable contract because it was not signed by plaintiff. While the Civil Court found the fee schedule agreement an enforceable writing under the statute of frauds (see General Obligations Law § 5-701 [a]), we are of the opinion that the statute of frauds does not apply since nothing in the fee schedule agreement prevented the possibility of its performance within a year (see D & N Boening v Kirsch Beverages, 63 NY2d 449, 453-455 [1984]; Pare v Aalbue, 222 AD3d 769, 772-773 [2023]; Starr v Akdeniz, 162 AD3d 948, 949 [2018]).

Nevertheless, the Civil Court properly focused on whether there had been a meeting of the minds sufficient to bind the parties to the agreement. Rubenstein's signature on the agreement, followed within a day by his request for plaintiff's "expert review, evaluation, and report," established his agreement to its terms. Plaintiff's performance of the work called for in the writing similarly established his agreement to its terms.

Even assuming that Rubenstein, as "of counsel" to defendant law firm, was not the law firm's actual or apparent agent, and that his one signature could not bind the law firm, we find that the law firm ratified Rubenstein's actions: first, by paying plaintiff's initial invoice, which was based on the fee schedule agreement, for work which Karlovsky had performed at Rubenstein's behest; and second, by using the report Rubenstein had requested from Karlovsky in its client's malpractice action after its receipt of plaintiff's second invoice. The law firm thus was properly held liable for payment pursuant to the terms of plaintiff's fee schedule (see Finger & Finger, A Professional Corp. v Buckingham Owners, Inc., 165 AD3d 887, 888 [2018] [the plaintiff law firm was entitled to recover unpaid fees based on a retainer agreement where the defendant accepted the benefits of the legal work the plaintiff performed]; CIT Tech. Fin. Servs., Inc. v Franklin First Fin., Ltd., 132 AD3d 715 [2015] [the defendant ratified a lease by making monthly payments thereon]; Mulitex USA, Inc. v Marvin Knitting Mills, Inc., 12 AD3d 169 [2004] [the defendant's partial payment of invoices constituted a ratification of agreements made on the defendant's behalf]).

By establishing the existence of a contract that set forth plaintiff's hourly rates, Karlovsky's performance under the contract, defendants' acceptance and use of plaintiff's work product, and defendants' failure to pay plaintiff's final invoice, plaintiff established, prima facie, defendants' liability for breach of contract (see Law Offs. of Ira H. Leibowitz v Landmark Ventures, Inc., 131 AD3d 583, 584 [2015]). The burden thereupon shifted to defendants to prove their affirmative defenses (see 57 NY Jur 2d, Evidence and Witnesses § 165), that plaintiff had billed an excessive number of hours and that his expert opinion, as reflected in his report, was unsatisfactory. Defendants failed to provide any evidence in support of those defenses, apart from their own assertion that they had never paid as much for an expert report as plaintiff had charged and did not believe that Karlovsky's report represented his actual opinion. In this circumstance, we find no basis to disturb the Civil Court's findings.

Accordingly, the judgment, insofar as appealed from, is affirmed.

TOUSSAINT, P.J., MUNDY and QUIÑONES, JJ., concur.

ENTER:

Jennifer Chan

Chief Clerk

Decision Date: May 15, 2026