Sebco Dev., Inc. v Siegel & Reiner, LLP (2024 NY Slip Op 50292(U))

[*1]

Sebco Dev., Inc. v Siegel & Reiner, LLP

2024 NY Slip Op 50292(U)

Decided on March 20, 2024

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2024
Supreme Court, Bronx County

Sebco Development, Inc.; 178TH STREET HOUSING DEVELOPMENT FUND COMPANY, INC.; 479 COURTLANDT AVENUE HOUSING DEVELOPMENT FUND CORPORATION; CROTONA PARTNERS L.P.; ERMA CAVA HOUSING DEVELOPMENT FUND COMPANY, INC.; E.C. HOUSING DEVELOPMENT FUND COMPANY, INC.; FILOMENA GARDENS HOUSING DEVELOPMENT FUND COMPANY, INC.; FOX STREET HOUSING DEVELOPMENT FUND CORPORATION; HUNTS POINT HOUSING DEVELOPMENT FUND CORPORATION; PIO/VIP L.P.; ROSINA ASSOCIATES L.P.; SEBCO HOUSING DEVELOPMENT FUND COMPANY, INC.; TIFFANY GARDENS, L.P.; TIMPSON HOUSING DEVELOPMENT FUND CORPORATION; WILLIS AVENUE ASSOCIATES, L.P., Plaintiff(s),

against
Siegel & Reiner, LLP AND IRWIN SIEGEL, ESQ., Defendant(s).

Index No. 808310/23E

Counsel for Plaintiffs:
Frankfurt Kurnit Klein & Selz
Perlman & Perlman, LLP
Counsel for Defendants: 
Furman Kornfeld & Brennan LLP

Fidel E. Gomez, J.

In this action for, inter alia, legal malpractice, defendants move, inter alia, pursuant to CPLR § 3211(a)(5) for an order dismissing plaintiffs' complaint because, inter alia, the claims for legal malpractice are time-barred by the applicable three-year statute of limitations. Saliently, defendants contend that the only sufficiently pleaded claim for legal malpractice accrued more than three years prior to the commencement of this action. Plaintiffs oppose the instant motion asserting, inter alia, that the continuous representation doctrine extended the applicable statute of limitations such that the claim for legal malpractice was timely commenced.
For the reasons that follow hereinafter, defendants' motion is granted, in part.
The instant action is for legal malpractice, breach of fiduciary duty, tortious interference [*2]with business relations, declaratory judgment, and replevin. The complaint, filed on May 26, 2023, alleges the following. Plaintiff SEBCO DEVELOPMENT, INC. (Sebco) is a not-for-profit organization which provides affordable housing and charitable services in the Bronx. Nonparty Salvatore Gigante (SG) is Sebco's Chief Operating Officer and nonparty Latoya Allen (LA) is Sebco's Vice President of Operations and Director of Management. The remaining plaintiffs (property owners), own affordable housing buildings in Bronx County and each is either Sebco's direct affiliate or subsidiary. The property owners hold beneficial title to their buildings, which provide subsidized, affordable housing to low-income families and low-income senior citizens who reside therein. With respect to the property owners and their properties, Sebco sponsored and developed each of the affordable housing projects existing at the buildings owned by the property owners and Sebco provides oversight on all fiscal matters for the property owners. Defendant SIEGEL & REINER, LLP (SR) is a law firm at which defendant IRWIN SIEGEL (Siegel) is a partner. Siegel and SR previously provided both legal and accounting services for plaintiffs, essentially acting as outside general counsel. Specifically, Siegel previously, inter alia, advised plaintiffs on all corporate matters, ensuring plaintiffs' compliance with corporate formalities, advising plaintiffs on all refinancing projects, and advising plaintiffs on all governmental regulatory matters to ensure that plaintiffs were in full compliance therewith. In addition to representing plaintiffs, defendants also represented other entities, including nonparties Building Management Associates, Inc. (BMA), Fox River Properties, Inc. (Fox), Sebco IV Associates, LP (Sebco IV), and Father Louis Gigante (FLG), and or his estate. FLG founded Sebco and BMA and upon his death, Siegel became the executor of FLG's estate. In that capacity, Siegel controls BMA, has an interest in and also controls Fox, the latter being Sebco IV's general partner, which Siegel also controls. Nonparty Luigino Gigante (GG) is FLG's son, the beneficiary of FLG's estate, and Siegel's client. BMA is a not-for-profit property management agency, that, until February 25, 2023, managed the property owners' buildings. Prior to BMA's termination, Sebco and BMA had a close working relationship. They shared office space at premises owned by and leased from Fox and also shared staff. Prior to BMA's termination, SG was BMA's President. Although defendants counseled and represented BMA, Fox, and Sebco IV on a host of transactions and did so while simultaneously representing Sebco in those transactions, defendants never disclosed such dual representation. To the extent that with respect to the foregoing transactions, Sebco's interests were divergent from BMA, Fox, FLG, and Sebco IV's interest, the dual representation created a conflict of interest, obligating defendants to disclose the dual representation and to recommend that Sebco obtain independent counsel. The failure to advise plaintiffs of the foregoing conflicts of interest, including decisions made by Siegel after FLG's death when Siegel was FLG's attorney-in-fact, have caused plaintiffs damage. In April 2022, defendants were terminated and, after plaintiffs retained new counsel, it was discovered that defendants had failed to provide legal advice to plaintiffs, which as a result, meant that they had not complied with corporate and regulatory formalities. Specifically, Sebco's documentation was inadequate, its corporate documents were never properly updated to reflect FLG's death, and after Sebco was audited by the City of New York, the latter raised issues concerning transactions to which Sebco was a party. Significantly, transactions between Sebco, Sebco IV, and nonparty Crotona Belmont, continued to bear FLG's signature even after he had resigned and ultimately died. Siegel never advised Sebco that FLG had to be omitted from these [*3]documents and, in fact, refused to remove him from the same. In 2018, Sebco began work as a sponsor and developer on a project whereby it sought to obtain refinancing in order to rehabilitate an affordable housing property owned by Sebco IV. Defendants acted as Sebco's counsel in the foregoing endeavor for which Sebco expended significant labor and financial resources. Despite the obligation to provide Sebco with their undivided loyalty, defendants represented other entities and individuals in the foregoing transaction, including BMA, Fox, Sebco IV and FLG. To that end, since defendants failed to disclose the conflict of interest and Sebco was paying defendant for legal services that benefitted parties with interests adverse to Sebco, defendants violated New York Rules of Professional Conduct 1.7 and 18(f). Prior to defendants' termination in April 2022, all parties were cooperatively working to accomplish the ultimate goal on the Sebco IV project. However, thereafter, in order to aid their other clients, defendants began to interfere with the completion of the project, by (1) asserting in 2018 that the refinancing sought by Sebco IV required the consent of Sebco IV's limited partner, which advice was at variance to defendants' advice to Sebco in 2015; and (2) asserting that Sebco would not be entitled to a developer fee, which meant that defendants, after a review of the budget for the project, knew that Sebco was involving itself in a financially detrimental project. But for defendants' legal advice in 2015 and its failure to advise Sebco that it would earn no developer fee on the project, Sebco would have never undertaken the Sebco IV project. Additionally, defendants, inter alia, submitted documentation to the New York City Department of Housing Preservation and Development (HPD) seeking to establish an HDFC for Sebco IV, which would confer tax benefits to Sebco IV and none to Sebco. With respect to BMA's termination, on January 9, 2023, GG and Siegel entered the space jointly occupied by Sebco and BMA. GG and Siegel were accompanied by armed guards. Siegel intimidated the employees at the premises and encouraged many of Sebco's employees to resign and begin working for BMA. GG and Siegel attempted to break into SG's office, gained entry, rummaged through SG's desk, and took some of SG's property. Siegel left notices at the office, indicating that SG was no longer BMA's president and that GG was BMA's new president. On January 10, 2023, GG and Siegel engaged in similar behavior and Siegel threatened Sebco's employees. On January 10, 2023, Fox served a 10-day Notice to Quit upon Sebco, seeking to prematurely terminate its lease. Based on the foregoing, and because GG lacked the requisite knowledge to be defendant's President, on January 11, 2023, the property owners decided to terminate their relationship with BMA and further determined that Sebco would assume the management of the property owners' properties. Thereafter, on January 17, 2023, BMA and GG, at Siegel's behest, denied plaintiffs the ability to access their own bank accounts. Between January 19 and February 8, 2023, based on GG and Siegel's actions, many BMA employees resigned. On February 3, 2023, Sebco terminated their lease with Fox. Despite representing plaintiffs when the management agreements were executed, such that Siegel was aware that BMA's termination was authorized thereunder, Siegel nevertheless interfered and obstructed Sebco's assumption of the management of the property owners' buildings. Such obstruction, which included the denial of access to plaintiffs' own bank accounts, has caused financial damage to Sebco and the property owners. The foregoing obstruction by Siegel constitutes a breach of the fiduciary duty he then owed to plaintiffs. In addition to the foregoing, Siegel also breached his fiduciary duty to Sebco when at his behest, BMA sued SG and LA, solely to prevent plaintiffs from terminating their prior management [*4]agreements with BMA. Said lawsuit frivolously asserted that SG and LA interfered with BMA's business relationships with the property owners and that SG and LA encouraged BMA's employees to resign. While the law suit was ultimately discontinued, on March 13, 2023, Siegel sent a letter to nonparty St. Barnabus Housing Development Corporation (St. Barnabas), with whom Sebco had an ongoing beneficial relationship, wherein Siegel apprised St. Barnabas that he had requested that HPD and other agencies not allow any company in which SG had any interest to manage any property, apprised St. Barnabus that BMA had sued SG and LA, and shared links to newspaper reports which contained negative information about SG and LA. As a result, on April 24, 2023, in a telephone call between Sebco and United States Department of Housing and Urban Development (HUD), the latter indicted that the call was prompted by the dispute between Sebco and BMA about which HUD learned from GG and Siegel. HUD then indicated that it did not want Sebco to manage several properties. On May 15, 2023, Siegel sent Sebco a letter asking it to remove FLG's name and likeness from Sebco' website. Since Siegel had previously approved of Sebco's use of FLG's name and likeness on Sebco's website, the letter taking a contrary position constitutes a breach by Siegel of his fiduciary duty to Sebco. After defendants were terminated, Sebco demanded that they return all files and documents relating to Sebco's operations and corporate matters. Said files were the result of defendants' decades-long representation of Sebco. Despite the request, defendants have refused to return the aforementioned files.
Based on the foregoing, plaintiffs interpose five causes of action. The first is for legal malpractice, wherein it is alleged that defendants, as counsel to plaintiffs for many years, owed a duty to provide them with the care, skill, and diligence commonly exercised by members of the legal profession, breached said duty, causing plaintiffs actual and consequential damages. The second cause of action is for breach of fiduciary duty, wherein it is alleged that defendants assumed the duty to refrain from engaging in behavior which created a conflict of interest or to disclose any such conflicts of interest. It is further alleged that those duties continued after defendants were terminated and included the duty to refrain from representing a client adverse to plaintiffs in any matter on which defendants previously represented and/or advised plaintiffs. Defendants breached the foregoing duties causing actual and consequential damages. The third cause of action is for tortious interference with business relations, wherein it is alleged that defendants interfered with plaintiffs relationships with agencies and third parties, which are necessary to provide housing services to low income individuals and that, as a result plaintiffs have been damaged. The fourth cause of action is for declaratory judgment, wherein it is alleged that because defendants owed plaintiffs a duty to refrain from representing clients adverse to plaintiffs in matters where defendants previously represented plaintiffs, the court should declare that defendants are precluded from representing BMA, Fox, GG, and FLG's estate. The last cause of action is for replevin, wherein it is alleged that plaintiffs have a property right to their files, which were created by virtue of defendants' prior representation and that, since defendants have refused to return those files, an order should be issued compelling that the files be returned to plaintiffs.
Defendants' motion seeking dismissal of the complaint is granted in part. Significantly, the complaint on behalf of plaintiffs FILOMENA GARDENS HOUSING DEVELOPMENT FUND COMPANY INC. (Filomena), and E.C. HOUSING DEVELOPMENT FUND [*5]COMPANY, INC. (EC) is dismissed pursuant to CPLR § 3211(a)(1) and (7) because as to these plaintiffs, the documentary evidence conclusively establishes that absent consent from HUD, neither Filomena nor EC have the authority to bring this action and since the complaint is bereft of any such assertion, it fails to state a cause of action on behalf of the foregoing plaintiffs. Plaintiffs' claim for legal malpractice is dismissed pursuant to CPLR § 3211(a)(5) and (7). Significantly, all the claims for malpractice fail to state a cause of action because the claims of alleged damages are vague and conclusory. Moreover, to the extent that the claim involving the Sebco IV refinancing project sufficiently pleads plaintiffs' damages, that claim accrued in 2015 and is thus barred by the applicable three-year statute of limitations. Plaintiffs' claim for breach of fiduciary duty is dismissed pursuant to CPLR § 3211(a)(7), since to the extent that the damages alleged as arising therefrom are vague and conclusory, the complaint fails to state a cause of action. Plaintiffs' claim for tortious interference with business relations is dismissed pursuant to CPLR § 3211(a)(7) because insofar as the complaint fails to allege that defendants interfered with plaintiffs' relationship with a third-party solely to harm plaintiffs or by engaging in unlawful, criminal, or independently tortious conduct, the complaint fails to state a cause of action. Defendants' motion seeking dismissal of the claims for declaratory judgment is granted pursuant to CPLR § 3211(a)(7). Significantly, the complaint fails to sufficiently allege the existence of a present controversy, requiring adjudication by a declaratory judgment. Defendants' motion seeking to dismiss the cause of action for replevin is denied since the complaint states a cause of action and defendants proffer no other legally cognizable basis to dismiss the same. Significantly, the complaint, to the extent that it states that plaintiffs have a property right to their files, which defendants have refused to return, states a cause of action for replevin.
Standard of Review
Pursuant to CPLR § 3211(a)(1), a pre-answer motion for dismissal based upon documentary evidence should only be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 88 [1994]; IMO Industries, Inc. v Anderson Kill & Olick, P.C., 267 AD2d 10, 10 [1st Dept 1999]). Much like on a motion pursuant to CPLR § 3211(a)(7), on a motion to dismiss pursuant to CPLR § 3211(a)(1), the allegations in plaintiff's complaint are accepted as true, constructed liberally and given every favorable inference (Arnav Industries, Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, L.L.P., 96 NY2d 300, 303 [2001], overruled on other grounds by Oakes v Patel, 20 NY3d 633 [2013]; Hopkinson III v Redwing Construction Company, 301 AD2d 837, 837-838 [3d Dept 2003]; Fern v International Business Machines Corporation, 204 AD2d 907, 908-909 [3d Dept 1994]).
Affidavits are not documentary evidence for purposes of establishing relief under CPLR § 3211(a)(1) (Fleming v Kamden Properties, LLC, 41 AD3d 781, 781 [2d Dept 2007][Here, the appellants' submissions in support of their motion included an affidavit and a verified Surrogate's Court petition which the Supreme Court properly declined to consider on a motion to dismiss pursuant to CPLR 3211 (a)(1) because the submissions did not constitute documentary evidence."]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 347 [2d Dept 2003]).
Significantly, documentary evidence means judicial records, judgments, orders, contracts, [*6]deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Webster Estate of Webster v State of New York, 2003 WL 728780, at *1 [Ct Cl Jan. 30, 2003]).A defendant seeking dismissal of an action pursuant to CPLR § 3211(a)(5) as barred by the applicable statute of limitations bears the burden of establishing that the applicable statute of limitations expired prior to the commencement of the action (Swift v New York Medical College, 25 AD3d 686, 687 [2d Dept 2006]; Gravel v Cicola, 297 AD2d 620, 620 [2d Dept 2002]; Duran v Mendez, 277 AD2d 348, 348 [2d Dep 2000]). Moreover, on such a motion, the court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff (Is. ADC, Inc. v Baldassano Architectural Group, P.C., 49 AD3d 815, 816 [2d Dept 2008]; Sabadie v Burke, 47 AD3d 913, 914 [2d Dept 2008]; In re Schwartz, 44 AD3d 779, 779 [2d Dept 2007]). If defendant meets his burden, in order to avoid dismissal, it is incumbent upon the plaintiff to present evidence establishing that the cause of action falls within an exception to the statute of limitations (Gravel at 621). Significantly, pursuant to CPLR § 304(a) "[a]n action is commenced by filing a summons and complaint or summons with notice."
On a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), all allegations in the complaint are deemed to be true (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]). All reasonable inferences which can be drawn from the complaint and the allegations therein stated shall be resolved in favor of the plaintiff (Cron at 366). In opposition to such a motion a plaintiff may submit affidavits to remedy defects in the complaint (id.). If an affidavit is submitted for that purpose, it shall be given its most favorable intendment (id.). The court's role when analyzing the complaint in the context of a motion to dismiss is to determine whether the facts as alleged fit within any cognizable legal theory (Sokoloff at 414). In fact, the law mandates that the court's inquiry be not limited solely to deciding whether plaintiff has pled the cause of action intended, but instead, the court must determine whether the plaintiff has pled any cognizable cause of action (Leon v Martinez, 84 NY2d 83, 88 [1994] ["(T)he criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one."]). However, "when evidentiary material [in support of dismissal] is considered the criterion is whether the proponent of the pleading has a cause of action not whether he has stated one" (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
As noted above, documentary evidence means judicial records, judgments, orders, contracts, deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Webster Estate of Webster at *1 [Ct Cl Jan. 30, 2003]). Accordingly, much like on a motion seeking dismissal pursuant to CPLR § 3211(a)(1), where affidavits and deposition transcripts are not documentary evidence sufficient to establish a right to dismissal, on a motion pursuant to CPLR § 3211(a)(7), affidavits will not support dismissal unless they conclusively establish that plaintiff has no cause of action (Fleming v Kamden Properties, LLC, 41 AD3d 781, 781 [2d Dept 2007]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 347 [2d Dept 2003] ["affidavits submitted by a defendant [in support of a motion [*7]pursuant to CPLR § 3211(a)(7)] will almost never warrant dismissal under CPLR 3211 unless they establish conclusively that the plaintiff has no cause of action" (Sokol v Leader, 74 AD3d 1180, 1182 [2d Dept 2010] [internal quotation marks omitted and emphasis added]; see Rovello v Orofino Realty Co., Inc., 40 NY2d 633, 636 [1976] ["affidavits submitted by the defendant will seldom if ever warrant the relief he seeks unless too the affidavits establish conclusively that plaintiff has no cause of action."]; Matter of Lawrence v Miller, 11 NY3d 588, 595 [2008]).
CPLR § 3013 states that
[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.
As such, a complaint must contain facts essential to give notice of a claim or defense (DiMauro v Metropolitan Suburban Bus Authority, 105 AD2d 236, 239 [2d Dept 1984]). Vague and conclusory allegations will not suffice (id.); Fowler v American Lawyer Media, Inc., 306 AD2d 113, 113 [1st Dept 2003]); Shariff v Murray, 33 AD3d 688, 690 [2d Dept 2006]; Stoianoff v Gahona, 248 AD2d 525, 526 [2d Dept 1998]). When the allegations in a complaint are vague or conclusory, dismissal for failure to state a cause of action is warranted (Schuckman Realty, Inc. v Marine Midland Bank, N.A., 244 AD2d 400, 401 [2d Dept 1997]; O'Riordan v Suffolk Chapter, Local No. 852, Civil Service Employees Association, Inc., 95 AD2d 800, 800 [2d Dept 1983]). While generally, on a motion to dismiss the complaint for its failure to state a cause of action, the facts in the complaint are deemed true, "bare legal conclusions and factual claims which are flatly contradicted by the record are not presumed to be true" (Parola, Gross & Marino, P.C. v Susskind, 43 AD3d 1020, 1021-1022 [2d Dept 2007]; Meyer v Guinta, 262 AD2d 463, 464 [2d Dept 1999]).
Applicable Law
Contract Law
It has long been held that absent a violation of law or some transgression of public policy, people are free to enter into contracts, making whatever agreement they wish, no matter how unwise they may seem to others (Rowe v Great Atlantic & Pacific Tea Company, Inc., 46 NY2d 62, 67-68 [1978]). Consequently, when a contract dispute arises, it is the court's role to enforce the agreement rather than reform it (Grace v Nappa, 46 NY2d 560, 565 [1979]). In order to enforce the agreement, the court must construe it in accordance with the intent of the parties, the best evidence of which being the very contract itself and the terms contained therein (Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]). It is well settled that "when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co., Inc. v 583 Madison Realty Company, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569). Accordingly, courts should refrain from interpreting agreements in a manner which implies something not specifically included by the parties, and courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new [*8]contract for the parties under the guise of interpreting the writing (Vermont Teddy Bear Co., Inc. at 475). This approach serves to preserve "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses [and] infirmity of memory" (Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995] [internal quotation marks omitted]).
The proscription against judicial rewriting of contracts is particularly important in real property transactions, where commercial certainty is paramount, and where the agreement was negotiated at arm's length between sophisticated, counseled business people (Vermont Teddy Bear Co., Inc. at 475). Specifically, in real estate transactions, parties to the sale of real property, like signatories of any agreement, are free to tailor their contract to meet their particular needs and to include or exclude those provisions which they choose. Absent some indicia of fraud or other circumstances warranting equitable intervention, it is the duty of a court to enforce rather than reform the bargain struck (Grace v Nappa, 46 NY2d 560, 565 [1979]).
In the absence of fraud or other wrongful act, a party who signs a written contract is presumed to know and have assented to the contents therein (Pimpinello v Swift & Co., 253 NY 159, 162 [1930]; Metzger v Aetna Ins. Co., 227 NY 411, 416 [1920]; Renee Knitwear Corp. v ADT Sec. Sys., 277 AD2d 215, 216 [2d Dept 2000]; Barclays Bank of New York, N.A. v Sokol, 128 AD2d 492, 493 [2d Dept 1987]; Slater v Fid. & Cas. Co. of NY, 277 AD 79, 81 [1st Dept 1950]). As the court in Pimpinello noted,
Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.'So, if the party that is to seal the deed, can read himself and doth not, or being an illiterate or a blind man, doth not require to hear the deed read, or the contents thereof declared, in these cases albeit the deed be contrary to his mind, yet it is good and unavoidable.' That a party should be bound by a contract, or by a conveyance, which he had no will to make may seem anomalous. Professor Wigmore, in explanation, reasons that the actor, having the will to sign the writing, is bound by the consequence, 'reasonably to have been anticipated' from the signing of a document unread, that its terms might not truly express the intent of the signer (id. at 162-163 [internal citations omitted].). Indeed, because a person who executes a writing is "under the obligation to exercise ordinary diligence to ascertain the terms of the document he[/she] sign[s]" (PNC Capital Recovery v Mech. Parking Sys., Inc., 283 AD2d 268, 272 [1st Dept 2001]), such person is presumed to have read and understood it, and any claim thereafter that the party did not understand what he/she signed is not a legally cognizable defense (Chase Lincoln First Bank, N.A. v Mark Homes, Inc., 170 AD2d 995, 995 [4th Dept 1991] ["Defendant Zemke seeks to avoid enforcement of his guarantee by averring that he failed to read the document before signing it, that he was never informed that he was signing a personal guarantee and that the legal implications of the document were never explained to him. Such allegations are insufficient to defeat plaintiff's motion."]; Mar. Midland Bank, N.A. v Idar Gem Distributors, Inc., 133 AD2d 525, 526 [4th Dept 1987]["A party to a writing is presumed to have read and understood the document which he signed. Moufarrege's allegation that he signed a document clearly captioned 'Unlimited Continuing Guaranty' without understanding the character of the document is wholly insufficient to establish a legal defense (internal citations omitted).]; Manufacturers & Traders [*9]Tr. Co. v Commercial Door & Hardware, Inc., 51 AD2d 362, 366 [4th Dept 1976] ["Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him" (internal citations and quotation marks omitted).]; Humble Oil & Ref. Co. v Jaybert Esso Serv. Sta., Inc., 30 AD2d 952, 952 [1st Dept 1968] ["The law does not relieve a person merely because he has failed to read a document which he has executed" (internal quotation marks omitted).]). Indeed, a person is bound by what he/she signs and cannot claim that he/she was fraudulently induced into signing it merely because the document alleged was nestled among a series of documents said person was asked to sign or because it was represented that the document was merely a routine document (Dunkin' Donuts of Am., Inc. v Liberatore, 138 AD2d 559, 560 [2d Dept 1988] ["Moreover, the mere fact that the guarantor was not told that a personal guarantee was among the documents she was asked to sign is insufficient to establish a defense of fraudulent inducement. Assuming, arguendo, that DDA's sales manager referred to the guarantee as a routine document, that fact alone is not enough to establish fraud. Here, the guarantee clearly indicated that the signatories would unconditionally guarantee the performance of all duties and obligations of the corporation. In addition, the document was unambiguously identified as a personal guarantee. It has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" (internal citations and quotation marks omitted).]). So strong is the policy which presumes that a party has read and understands what he/she has signed that as it relates to fraudulent misrepresentation, a person who executes a document is bound and cannot generally prevail on a fraud in the factum claim - that the party was induced into executing a document that he/she was led to believe was something altogether different (ABR Wholesalers, Inc. v King, 172 AD3d 1929, 1930-1931 [4th Dept 2019] [King further asserts that the court erred in granting plaintiff's motion because there are issues of fact concerning whether plaintiff misrepresented the note as a guaranty for future credit purchases. We also reject that contention. Such a contention constitutes one for fraud in the factum, also known as fraud in the execution, i.e., that the party was induced to sign something entirely different than what the party thought he or she was signing. However, a party to a writing is presumed to have read and understood the document which he or she signed and, absent some impairment, cannot justifiably rely on another's representation that the words used in the relevant document mean something other than what they plainly state" (internal citations and quotation marks omitted).]). To be sure, a fraud in the factum claim requires more than an allegation that a document was executed pursuant to a misrepresentation with respect to its contents; requiring allegations that "the plaintiff was induced to sign something different from what he or she thought was being signed [and only] arises if the signer is illiterate, blind, or not a speaker of the language in which the document is written" (Countrywide Home Loans, Inc. v Gibson, 157 AD3d 853, 856 [2d Dept 2018]; Anderson v Dinkes & Schwitzer, P.C., 150 AD3d 805, 806 [2d Dept 2017]; Ackerman v Ackerman, 120 AD3d 1279, 1280 [2d Dept 2014]).
Provided a writing is clear and complete, evidence outside its four corners "as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; Mercury Bay Boating Club Inc. v San Diego Yacht Club, 76 NY2d 256, 269-270 [1990]; Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822 [1984]). Whether a contract is ambiguous is a matter of law for the court to decide (id. at 162; Greenfield at 169; Van Wagner Adv. Corp. v S & M Enterprises, 67 NY2d 186, 191 [1986]). A contract is unambiguous if the language it uses has "definite and precise meaning, unattended by danger of misconception in purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Greenfield at 569; see Breed v Ins. Co. of N. Am., 46 NY2d 351, 355 [1978]). Hence, if the contract is not reasonably susceptible to multiple meanings, it is unambiguous and the court is not free to alter it, even if such alteration reflects personal notions of fairness and equity (id. at 569-570). Notably, it is well settled that silence, or the omission of terms within a contract are not tantamount to ambiguity (id. at 573; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Instead, the question of whether an ambiguity exists must be determined from the face of an agreement without regard to extrinsic evidence (id. at 569-570), and an unambiguous contract or a provision contained therein should be given its plain and ordinary meaning (Rosalie Estates, Inc. v RCO International, Inc., 227 AD2d 335, 336 [1st Dept 1996]). 
Notably, while the parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument, it has no application in a suit brought where there are claims of fraud in the execution of an agreement or to rescind a contract on the ground of fraud (Sabo v Delman, 3 NY2d 155, 161 [1957]; Adams v Gillig, 199 NY 314, 319 [1910]; Berger-Vespa v Rondack Bldg. Inspectors Inc., 293 AD2d 838, 840 [3d Dept 2002]).
Legal Malpractice
In order to establish a cause of action for legal malpractice a plaintiff must plead and ultimately prove that his/her attorney was negligent in the representation provided to the plaintiff, that the negligence was the proximate cause of the plaintiff's damages, that but for the attorney's alleged malpractice the plaintiff would have prevailed in the underlying action, and actual and ascertainable damages (Franklin v Winard, 199 AD2d 220, 221 [1st Dept 1993]; Zeitlin v Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, 209 AD2d 510, 510 [2d Dept. 1994); Marshall v Nacht, 172 AD2d 727, 728 [2d Dept 1991]; Fidler v Sullivan, 93 AD2d 964, 964 [3d Dept 1983].
With regard to causation, "[a] plaintiff's burden of proof in a legal malpractice action is a heavy one" (Lindenman v Kreitzer, 7 AD3d 30, 34 [1st Dept 2004]). This is because a plaintiff asserting such a cause of action must in essence prove a case within a case (id. at 34) Meaning, that before he can litigate the issue of an attorney's negligent representation and any liability stemming therefrom, he must first demonstrate the hypothetical favorable outcome of the underlying action from which the claim of malpractice stems (id. at 34). Thus, to prevail in a legal malpractice action, a plaintiff is required to prove that defendant, the former attorney, was negligent in the plaintiff's legal representation and that but for said negligence, plaintiff would have prevailed in the underlying and prior action (id. at 34 ["As the Fourth Department observed in the McKenna case, the requirement of proving a case within a case is a distinctive feature of [*10]legal malpractice actions arising from an attorney's alleged negligence in preparing or conducting litigation. It adds an additional layer to the element of proximate cause, requiring the jury to find the hypothetical outcome of other litigation before finding the attorney's liability in the litigation before it. Only after the plaintiff establishes that he would have recovered a favorable judgment in the underlying action can he proceed with proof that the attorney engaged to represent him in the underlying action was negligent in handling that action and that the attorney's negligence was the proximate cause of the plaintiff's loss since it prevented him from being properly compensated for his loss" (internal citations and quotation marks omitted)]; see Carmel v Lunney, 70 NY2d 169 [1987]; Pacesetter Communications Corporation v Solin & Breindel, P.C., 150 AD2d 232, 234 [1st Dept 1989]. Stated differently, a plaintiff must establish that but for the defendant attorney's negligence, he/she would have had a favorable outcome, i.e., that "a proper defense would have altered the result of the prior action" (Zarin v Reid & Priest, 184 AD2d 385, 386 [1st Dept 1992] [internal quoatation marks omitted]). Indeed, a plaintiff's failure to plead that but for an attorney's negligence he/she would have been successful in her underlying action warrants dismissal of a claim for legal malpractice (Stroock & Stroock & Lavan v Beltramini, 157 AD2d 590, 591 [1st Dept 1990]).
It is well settled that in New York, violations of the Rules of Professional Conduct, do not, absent more, provide a basis for a legal malpractice claim against an attorney or firm (Doscher v Meyer, 177 AD3d 697, 699 [2d Dept 2019] ["In addition, a violation of the Rules of Professional Conduct, in itself, does not give rise to a private cause of action against an attorney or law firm."]; Cohen v Kachroo, 115 AD3d 512, 513 [1st Dept 2014] ["To the extent that plaintiff seeks to allege malpractice based on a violation of the New York Rules of Professional Conduct, such an alleged violation does not, without more, support a malpractice claim."]; Kallman v Krupnick, 67 AD3d 1093, 1096 [3d Dept 2009]; Arkin Kaplan LLP v Jones, 42 AD3d 362, 366 [1st Dept 2007]; Weintraub v Phillips, Nizer, Benjamin, Krim, & Ballon, 172 AD2d 254, 254 [1st Dept 1991]). Accordingly, a conflict of interest, even if it amounts to a violation of the Code of Professional Responsibility, without more, will not give rise to claim of legal malpractice (Sumo Container Sta., Inc. v Evans, Orr, Pacelli, Norton & Laffan, P.C., 278 AD2d 169, 170 [1st Dept 2000]; Lavanant v Gen. Acc. Ins. Co. of Am., 212 AD2d 450, 451 [1st Dept 1995]). However, if the conflict of interest amounts to a breach of the duty of care and it is alleged or proven that damages were proximately caused by the breach, then such conflict is tantamount to legal malpractice (Esposito v Noto, 132 AD3d 944, 945 [2d Dept 2015] ["While a conflict of interest amounting to a violation of the Rules of Professional Conduct does not, in and of itself, amount to malpractice, liability can follow where the client can show that he or she suffered actual damage as a result of the conflict" (internal quotation marks omitted).]; Tabner v Drake, 9 AD3d 606, 610 [3d Dept 2004]). It bears noting that the latter line of cases do nothing more than reiterate, as noted above, that in an action for legal malpractice the proponent must establish negligence and proximate causation, and as relevant in those cases, that the alleged conflict of interest was a departure from the legal standard of care (Esposito at 946 ["Here, the defendant established, prima facie, that he did not depart from the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession by submitting his affidavit and a transcript of his deposition testimony to the effect that he fully explained the transaction and its inherent risks to the plaintiffs, who consented to his representation of Attia with regard to [*11]the development project. However, in opposition, the plaintiffs submitted an affidavit disputing these facts, thereby raising triable issues of fact regarding whether the defendant breached his duty of care."]; Tabner at 609-610 ["Having failed to establish lack of representation as a matter of law, to succeed on their motion for summary judgment on defendants' malpractice counterclaims plaintiffs either had to demonstrate the absence of any negligence on their part—i.e., show that they exercised the reasonable skill and knowledge commonly possessed by a member of the legal profession—or demonstrate that any negligence on their part was not the cause of any actual or ascertainable damage to defendants" (internal citations and quotation marks omitted).]).
With respect to damages, conclusory allegations of damages or injuries predicated on speculation cannot suffice for a malpractice action, and dismissal is warranted where the allegations in the complaint are merely conclusory and speculative (Mid City Elec. Corp. v Peckar & Abramson, 214 AD3d 646, 649 [2d Dept 2023]; Lam v Weiss, 219 AD3d 713, 716 [2d Dept 2023]; Denisco v Uysal, 195 AD3d 989, 991 [2d Dept 2021]; Kaplan v Conway and Conway, 173 AD3d 452, 452 [1st Dept 2019] ["Given the vague, speculative, and conclusory nature of these allegations, plaintiffs failed to allege facts that 'fit into any cognizable legal theory.'"]; Bua v Purcell & Ingrao, P.C., 99 AD3d 843, 848 [2d Dept 2012]; Zarin at 387-388 [The Court found plaintiff's alleged damages to his good reputation and credit-worthiness were speculative and incapable of being proven.]; see Postel v Jaffe & Segal, 237 AD2d 127, 127 [1st Dept 1997]; Brown v Samalin & Bock, P.C., 168 AD2d 531, 532 [2d Dept 1990] ["The plaintiff had no experience in real estate development, and his financing was questionable. Furthermore, there is no evidence that he would have been able to obtain permission to subdivide the property into a sufficient number of building lots to make subdivision profitable. Thus, the court properly granted partial summary judgment on the lost profits cause of action, since, as a matter of law, it was too speculative to support a recovery."]). Thus, the absence of actual damages is fatal (Ressis v Wojick, 105 AD2d 565, 567 [3d Dept 1984]). Notably, while on a motion to dismiss the complaint need not allege actual damages, at the very least facts must be pleaded, which if true, allow damages to be reasonably inferred (Fielding v Kupferman, 65 AD3d 437, 442 [1st Dept 2009] ["At this early stage of the proceedings, plaintiff is not obliged to show that he actually sustained damages but only that damages attributable to defendants' conduct might be reasonably inferred" (internal quotation marks omitted).]; Mackey Reed Elec., Inc. v Morrone & Assoc., P.C., 125 AD3d 822, 823 [2d Dept 2015]).
Pursuant to CPLR § 214(6) the statute of limitations for claims of non-medical malpractice is three years from the time the cause of action accrues, irrespective of whether the claim is premised on contract or tort (id. ["The following actions must be commenced within three years . . . an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort."]). Moreover, a cause of action for legal malpractice accrues and the statute of limitations begins to run on the date the alleged malpractice occurs (Shumsky v Eisenstein, 96 NY2d 164, 166 [2001]; Glamm v Allen, 57 NY2d 87, 93 [1982]. However, under the doctrine of continuous representation, if the attorney continues to represent the client in the underlying action, meaning for the same subject matter alleged to have given rise to the malpractice, the statute of limitations is tolled until such time the representation is terminated (Glam at 93 ["the plaintiff was not [*12]obligated to commence an action against his attorney during the period in which his attorney continued to represent him in the action to recover for the injuries he sustained at the fire scene."]; CLP Leasing Co., LP v Nessen, 12 AD3d 226, 227 [1st Dept 2004] ["Court held that continuous representation doctrine did not apply because "the documentation they submitted showed only the continuation of a general professional relationship, and not an ongoing representation concerning the specific matters from which their claims arose."]]; Parlato v Equit. Life Assur. Soc. of U.S., 299 AD2d 108, 114-15 [1st Dept 2002] ["Here, although plaintiffs claim that Soule had a continuous professional relationship with them through some point in 1996, Soule's advice related to a series of discrete and severable transactions. The complaint was therefore correctly dismissed to the extent it asserts claims by either plaintiff based on transactions that occurred prior to December 28, 1993."]). Stated differently, the continuous representation doctrine tolls the statute of limitations for a claim of legal malpractice if there is "indicia of an ongoing, continuous developing, and dependant relationship between the client an attorney" (Luk Lamellen U. Kupplungbau GmbH v Lerner, 166 AD2d 505, 506 [2d Dept 1990]; see Ainbinder Jacobi, 268 AD2d 494, 494 [2d Dept 2000]), and the continuous representation [is] in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship. Therefore, the pleading must assert more than simply an extended general relationship between the professional and client in that the facts are required to demonstrate continued representation in the specific matter directly under dispute (Zaref v Berk & Michaels, P.C., 192 AD2d 346, 347-348 [1st Dept 1993] [internal citations omitted]). Indeed, where an attorney represents a client in a several transactions the continuous representation doctrine will not avail a plaintiff merely because representation in other matters continued after the matter from which the alleged malpractice arose (Goldman v Akin Gump Strauss Hauer & Feld, LLP, 46 AD3d 481 [1st Dept 2007]). The facts in Goldman are instructive. In that case, the plaintiffs, who were general partners, alleged legal malpractice arising from defendants' legal advice concerning a sale, which, unbeknownst to them, exposed the limited partners to liability (id. at 481). More than three years thereafter, plaintiffs sued defendants, asserting that the statute of limitations had been tolled by defendants' continuous representation, namely a subsequent litigation brought against plaintiffs by a limited partner in which the defendants represented the plaintiffs (id. at 481). The court dismissed the action as time barred holding that defendants' representation in the arbitrations, which involved the merits of the litigation that was being threatened by the limited partners at the time plaintiffs retained defendants, was distinct from their representation in 'papering' the sale, which did not involve negotiating the terms of the sale or advising whether or not to proceed with it
(id. at 482; see Nuzum v Field, 106 AD3d 541 [1st Dept 2013] ["Moreover, the claim has to be dismissed in any event as time-barred. The allegedly defective documents were prepared in 1999, and thus, the statute of limitations ran no later than 2002. As this action was brought five years too late, in 2007, it must be dismissed. That defendant allegedly represented plaintiff in 2004 does not change this result. That representation, while related to the proceeds of the promissory notes drafted in 1999, was to draft documents to ensure the proceeds of the notes passed to plaintiff's children. Hence, the new representation was insufficiently related to the matter sued upon to bring it within the continuous representation doctrine (internal citations omitted)."]).
Breach of Fiduciary Duty
The proponent of a claim for breach of fiduciary duty must allege (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages caused by defendant's misconduct (Besen v Farhadian, 195 AD3d 548, 549 [1st Dept 2021]; Vil. of Kiryas Joel v County of Orange, 144 AD3d 895, 898 [2d Dept 2016]; Varveris v Zacharakos, 110 AD3d 1059, 1059 [2d Dept 2013]; Burry v Madison Park Owner LLC, 84 AD3d 699, 700 [1st Dept 2011]). With respect to the first element, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for the benefit of another upon matters within the scope of the relation" (id. at 1059 [internal quotation marks omitted]; see EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). To that end, while the violation of a disciplinary rule, does not, without more, give rise to a cause of action for breach of fiduciary (Schwartz v Olshan Grundman Frome & Rosenzweig, 302 AD2d 193, 199 [1st Dept 2003] ["The motion court properly dismissed plaintiff's claim for breach of fiduciary duty. The violation of a disciplinary rule does not, without more, generate a cause of action."]; Weintraub v Phillips, Nizer, Benjamin, Krim, & Ballon, 172 AD2d 254, 254 [1st Dept 1991]; Steinowitz v Gambescia, 24 Misc 3d 132[A], *2 [App Term 2009]), when an attorney discloses a client's confidential information, which was obtained by virtue of the attorney-client relationship, such conduct is sufficient to support a claim for breach of fiduciary duty (Napoli v New York Post, 175 AD3d 433, 435 [1st Dept 2019] ["Furthermore, plaintiff's allegations that Marc Bern disclosed confidential information obtained in the course of his representation of her and disclosed documents in violation of the attorney-client privilege state a cause of action against him for breach of fiduciary duty. The court correctly found that plaintiff's allegations, along with two affidavits supporting her claim that Bern represented her sufficiently pleaded the requisite elements of a breach of fiduciary duty claim" (internal citations omitted).]; Keller v Loews Corp., 69 AD3d 451, 451 [1st Dept 2010]). 
The proponent of an action alleging breach of fiduciary duty is held to the heightened pleading requirement promulgated by CPLR § 3016(b) and as such, where the damages alleged are threadbare and conclusory, the complaint must be dismissed (Mann v Sasson, 186 AD3d 823, 824 [2d Dept 2020] ["Here, the sixth cause of action, alleging breach of fiduciary duty against the Berger defendants, contained only bare and conclusory allegations related to damages, without any supporting detail, and failed to satisfy the requirements of CPLR 3016(b)."]; see Theaprin Pharm., Inc. v Conway, 137 AD3d 1254, 1255 [2d Dept 2016] ["The plaintiffs' causes of action alleging fraud and breach of fiduciary duty failed to satisfy the particularity requirements of CPLR 3016."]; Swartz v Swartz, 145 AD3d 818, 823 [2d Dept 2016]["A cause of action sounding in breach of fiduciary duty must be pleaded with the particularity required by CPLR 3016(b)."]; Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 808 [2d Dept 2011] ["A cause of action sounding in breach of fiduciary duty must be pleaded with the particularity required by CPLR 3016(b)."]). 
A breach of fiduciary duty claim, which is duplicative of a claim for legal malpractice cannot stand and must be dismissed (Cohen v Kachroo, 115 AD3d 512, 513 [1st Dept 2014] ["Plaintiff's cause of action alleging breach of fiduciary duty is dismissed as duplicative of the legal malpractice cause of action. Contrary to plaintiff's assertion, the breach of fiduciary duty claim alleged no new facts and sought the same damages as the legal malpractice claim."]; Cobble Cr. Consulting, Inc. v Sichenzia Ross Friedman Ference LLP, 110 AD3d 550, 551 [1st [*13]Dept 2013]; Garnett v Fox, Horan & Camerini, LLP, 82 AD3d 435, 436 [1st Dept 2011]). However, if the claim for breach of fiduciary duty is premised on an attorney's conduct accruing after the attorney/client relationship ends, such as a claim that the plaintiff's prior attorney continues to represent clients adverse to the plaintiff in matters related to the attorney's prior representation of the plaintiff, then the claim is not duplicative and should not be dismissed (O'Neal v Muchnick Golieb & Golieb, P.C., 149 AD3d 636, 637 [1st Dept 2017] ["The breach of fiduciary duty claim is not duplicative of the malpractice claims, since it is based on actions taken after the termination of the representation."]; (TVGA Eng'g, Surveying, P.C. v Gallick, 45 AD3d 1252, 1256 [4th Dept 2007] ["In the complaint and the exhibits attached to it, plaintiff alleges that Gallick continued to provide legal advice to Lehr after the attorney-client relationship between plaintiff and Gallick ended and that such advice was adverse to plaintiff's interests in matters that were substantially related. Thus, to the extent that Gallick's representation of Lehr continued after Gallick's representation of plaintiff ceased, the cause of action for breach of fiduciary duty arises from facts that are separate and distinct from those that form the basis of the legal malpractice cause of action, and the breach of fiduciary duty cause of action is not duplicative of the legal malpractice cause of action"]).
Tortious Interference With Prospective Business Relations
The elements of a claim for tortious interference with prospective business relations are (1) a plaintiff's business relationship with a third-party; (2) a defendant's knowledge of the relationship and the intentional interference with the same; (3) that the defendant's conduct arises solely from malice or that the defendant's conduct is improper, or illegal, such that it amounts to a crime or an independent tort; and (4) that defendant's conduct injured the plaintiff's relationship with the third-party (Stuart's, LLC v Edelman, 196 AD3d 711, 713 [2d Dept 2021]; Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47 [1st Dept 2009]; see Carvel Corp. v Noonan, 3 NY3d 182, 189 [2004] ["The franchisees' tort claim is that Carvel unlawfully interfered with the relationships between the franchisees and their customers. The franchisees do not claim that the customers had binding contracts that Carvel induced them to breach; they allege only that, by implementing its supermarket program, Carvel induced the customers not to buy Carvel products from the franchisees. The juries have found that Carvel did so induce customers, and the question for us is whether that inducement was tortious interference under New York law. We conclude that it was not because Carvel's conduct, which did not constitute a crime or an independent tort and was not aimed solely at harming franchisees, was also not the sort of egregious wrongdoing that might support a tortious interference claim in the absence of such an independently unlawful act or evil motive" (emphasis added).]). When a plaintiff alleges tortious interference with a contract, premised on interference which induces another to breach the contract, a plaintiff can recover by merely asserting or proving that defendant engaged in lawful, albeit deleterious behavior (NBT Bancorp Inc. v Fleet/Norstar Fin. Group, Inc., 87 NY2d 614, 621 [1996]). However, where the interference is merely with prospective business relations, liability is premised on defendant's use of wrongful and or illegal means (Guard-Life Corp. v S. Parker Hardware Mfg. Corp., 50 NY2d 183, 193-194 [1980] ["In sum, the imposition of liability for intentional interference with performance of a contract to which the competitor is a party must depend on the worth and significance of the objective interest to be protected. The actual, legal [*14]interest under a contract which may be avoided by the other contracting party at his election is not materially different from that under a contract which the other contracting party may terminate at will. In both instances the party seeking to impose liability enjoys no legally enforceable right to performance; his interest is a mere expectancy - a hope of future contractual relations. Consequently, there having been no trespass or invasion of a substantial legal interest, there is no liability for interference with performance of a competitor's voidable contract absent employment of wrongful means, unlawful restraint of trade, or lack of competitive motive."]; Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz v Landmark Ventures, Inc., 131 AD3d 583, 585 [2d Dept 2015]), or where malice is the sole motivating factor (Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 585; Devash LLC v German Am. Capital Corp., 104 AD3d 71, 79 [1st Dept 2013]; Advanced Glob. Tech., LLC v Sirius Satellite Radio, Inc., 44 AD3d 317, 318 [1st Dept 2007]). Indeed, "[c]onduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations" (Carvel Corp. at 190), and conduct is not wrongful unless it includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" (id. at 191; Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 586). Notably, where the complaint evinces that a defendant's actions were motivated by normal economic interest as opposed to malice, it fails to state a cause of action for tortious interference with prospective business relations (Devash LLC at 318; Advanced Glob. Tech., LLC at 318). The same is true when the complaint fails to allege that a defendant's conduct was directed at a third-party as opposed to the plaintiff (Carvel Corp. at 192 ["First, it is ill-founded because the economic pressure that must be shown is not, as the franchisees assume, pressure on the franchisees, but on the franchisees' customers."]; Devash LLC at 318). 
Declaratory Judgment
CPLR § 3001 provides, in relevant part, that
[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.
Generally, a declaratory judgment is intended to declare the respective legal rights of the parties based on specific facts and is not intended to declare findings of fact (Touro College v Novus University Corp., 146 AD3d 679, 679-680 [1st Dept 2017]; Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 100 [1st Dept 2009]). Stated differently, the general purpose of a declaratory judgment is to quiet or stabilize an uncertain or disputed jural relation concerning present or prospective obligations (James v Alderton Dock Yards, 256 NY 298, 305 [1931]; Touro College at 679). Thus, a declaratory judgment requires a justiciable controversy, in which the plaintiff has an interest sufficient to constitute standing to maintain the action and that such "controversy involve present, rather than hypothetical, contingent or remote, prejudice to plaintiffs (Am. Ins. Ass'n v Chu, 64 NY2d 379, 383 [1985]; Touro College at 680). A declaratory judgment should only be granted if it will have a direct and immediate effect upon the rights of the parties (Enlarged City School Dist. of Middletown v City of Middletown, 96 AD3d 840, 841 [2d Dept 2012]; Matter of United Water New Rochelle, Inc. v City of New York, 275 AD2d 464, 466 [2d Dept 2000]). As such, a declaratory judgment is premature "when the [*15]future event is beyond the control of the parties and may never occur" (Enlarged City School Dist. of Middletown at 841; AB Oil Services, Ltd. v TCE Insurance Services, Inc., 188 AD3d 624, 626 [2d Dept 2020]). Whether to grant a declaratory judgment rests wholly within the court's discretion (Morgenthau v Erlbaum, 59 NY2d 143, 148 [1983]; American News Co. v Avon Pub. Co., 283 AD 1041, 1042 [1st Dept 1954]).
Replevin
In an action for replevin, the plaintiff bears the burden of establishing that he/she has a superior possessory right to the chattel than that of the defendant (Batsidis v Batsidis, 9 AD3d 342, 343 [2d Dept 2004]; Pivar v Graduate School of Figurative Art of the New York Academy of Art, 290 AD2d 212, 213 [1st Dept 2002]). Accordingly, "[t]o state a cause of action for replevin, a plaintiff must establish a superior possessory right to property in a defendant's possession" (Reif v Nagy, 175 AD3d 107, 120 [1st Dept 2019]). Notably, an action for replevin lies against one who holds chattel when it is alleged that chattel was stolen, even if the holder acquired the chattel in good faith and for value from another party (Solomon R. Guggenheim Found. v Lubell, 77 NY2d 311, 317 [1991]; Saltus & Saltus v Everett, 1838 WL 3100, at *9 [Ct App 1838] ["I think our law has not carried the protection of the fair vendee against the defrauded or unfortunate owner. It protects him when the owner's misplaced confidence has voluntarily given to another the apparent right of property or of sale. But if the owner loses his property, or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to its use by hiring, or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be performed on it, the owner can follow and reclaim it in the hands of any person, however innocent."]). A person with no ownership rights in chattel may not maintain an action for replevin (Ciccone v Gotta Have It! Collectibles, Inc., 156454/17, 2019 WL 2344287, at *1 [1st Dept June 4, 2019] ["As plaintiff no longer owns the property, she may not maintain claims for conversion and replevin against the auction house defendants."]). In Ciccone, plaintiff sued to recover possession of and to enjoin defendants from auctioning personal property alleged by plaintiff to belong to her (id. at *1). However, because the Court determined that the property, which had previously belonged to plaintiff, had been lawfully transferred by her to one of the defendants, the court, holding that no cause of action for replevin therefore existed, dismissed the complaint (id.).
Discussion
In support of the instant motion, to the extent relevant, defendants submit three HDFC Agreements (HDFC Agreements). The first is between EC and HUD and is dated September 30, 1983. The second is between Filomena and HUD and is dated October 15, 1998. The third is between Sebco/VIP Housing Development Fund Company, Inc. (Sebco/VIP) and HUD and is dated September 27, 1991. The foregoing agreements denominate EC, Filomena, and Sebco/VIP as mortgagors, evince that HUD is making a loan to EC, Filomena and Sebco/VIP, and state, in pertinent part that [i]n consideration of the making of the loan by HUD and the disbursement of any part thereof, and in order to comply with the requirements of the Housing Act of 1959, and the Regulations adopted by the Secretary pursuant thereto, the Mortgagor agrees for itself, its successors and assigns, and any owner of the mortgaged property, that in connection with the mortgaged property and the project operated thereon and so long as the loan is outstanding [that] No litigation seeking the recovery of the sum in excess of $5,000 nor any action for specific [*16]performance or other equitable relief shall be instituted nor shall any claim for a sum in excess of $5,000 be settled or compromised by the Mortgagor unless prior written consent thereto has been obtained from HUD.
Based on the foregoing, defendants motion is granted, in part.The complaint on behalf of EC and Filomena is dismissed pursuant to CPLR § 3211(a)(1) and (7). Significantly, the HDFC Agreements between EC and HUD and Filomena and HUD establish that the instant law suit cannot be brought absent permission from HUD and that the complaint is bereft of any such assertion. 
As discussed above, a pre-answer motion for dismissal pursuant to CPLR § 3211(a)(1), based upon documentary evidence, will be granted if "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen at 326; Leon at 88; IMO Industries, Inc. at 10). Moreover, "when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co., Inc. at 475 [internal quotation marks omitted]). Accordingly "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569).
Here, the HDFC Agreements between EC and HUD and Filomena and HUD establish that law suits which seek in excess of $5,000 in damages cannot be brought absent permission from HUD and that the complaint is bereft of any such assertion. To be sure, a review of the complaint finds it bereft of any allegation that EC and Filomena obtained the requisite consent from HUD prior to bringing this action, which to the extent that it was brought in this Court seeks damages in excess of $5,000. Moreover, were EC and Filomena seeking less than $5,000, a sum for which permission from HUD is not required, they would have brought the instant action in New York Civil Court, where the monetary jurisdiction is $50,000 or less (CCA § 202 ["The court shall have jurisdiction of actions and proceedings for the recovery of money, actions and proceedings for the recovery of chattels and actions and proceedings for the foreclosure of liens on personal property where the amount sought to be recovered or the value of the property does not exceed $50,000."]). Accordingly, defendants' documentary evidence when considered in tandem with the complaint, conclusively establishes their defense, namely that neither EC nor Filomena have the right to bring this action, which per the HDFC Agreements to which they are bound is a condition precedent to sue. 
Indeed, since the foregoing requirement is a condition precedent to initiate this action, EC and Filomena's claims are also dismissed pursuant to CPLR § 3211(a)(7). As noted above, on a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), all allegations in the complaint are deemed to be true (Sokoloff at 414; Cron at 366). All reasonable inferences which can be drawn from the complaint and the allegations therein stated shall be resolved in favor of the plaintiff (Cron at 366). In opposition to such a motion a plaintiff may submit affidavits to remedy defects in the complaint (id.). If an affidavit is submitted for that purpose, it shall be given its most favorable intendment (id.). The court's role when analyzing the complaint in the context of a motion to dismiss is to determine whether the facts as alleged fit within any cognizable legal theory (Sokoloff at 414). In fact, the law mandates that the court's inquiry be not limited solely to deciding whether plaintiff has pled the cause of action intended, but instead, the court must determine whether the plaintiff has pled any cognizable cause of action (Leon at 88). [*17]However, "when evidentiary material [in support of dismissal] is considered the criterion is whether the proponent of the pleading has a cause of action not whether he has stated one" (Guggenheimer at 275).
Here, since the complaint fails to plead that EC and Filomena obtained HUD's consent to bring this action, as to them it fails to plead a condition precedent to sue and thus fails to state a cause of action (see generally Davidson v Bronx Mun. Hosp., 64 NY2d 59, 61-62 [1984] ["Service of a notice of claim — the contents of which are prescribed by section 50-e of the General Municipal Law and section 7401 of McKinney's Unconsolidated Laws of NY — is a condition precedent to a lawsuit against a municipal corporation. Plaintiff must not only plead in his complaint that he has served a notice of claim, but must also allege that the notice was served at least 30 days prior to commencement of the action and that in that time defendants neglected to or refused to adjust or to satisfy the claim."]; Davidson Town of Philipstown v Garrison Contr., Inc., 85 AD3d 1014 [2d Dept 2011] [Action dismissed for failing to state a cause of action because "[t]he counterclaims asserted by the defendant required, as a condition precedent, a timely served notice of claim pursuant to General Municipal Law § 50—e."]). 
Although plaintiffs do not oppose this portion of defendants's motion, the motion to dismiss the complaint by PIO/VIP, for the same reasons that dismissal is sought and has been granted with respect to EC and Filomena, is nevertheless denied. Significantly, the third HDFC Agreement submitted by defendants is between HUD and Sebco/VIP and not PIO/VIP. Accordingly, since "[i]t is a general principle that only the parties to a contract are bound by its terms" (Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d 116, 121 [1st Dept 2020]), whereas here, PIO/VIP is not a party to the HDFC Agreement requiring HUD's permission to bring this action, defendants fail to establish that the instant action by PIO/VIP has been brought, as urged, without the requisite permission.
Plaintiffs' cause of action for legal malpractice is dismissed pursuant to CPLR § 3211(a)(1) and (5). Significantly, with the exception of the claim regarding defendants' failure to apprise Sebco that refinancing for the Sebco IV project required consent from the latter's limited partners, which is barred by the applicable statute of limitations, plaintiffs' remaining claims for legal malpractice plead damages in an insufficiently vague and conclusory fashion.
First, with respect to all claims except the claim regarding the Sebco IV refinancing project, the complaint is replete with references to damages, almost all of which fail to specify the exact nature and amount of damages alleged to have been incurred.
As noted above, a complaint must contain facts essential to give notice of a claim or defense (DiMauro at 239). Vague and conclusory allegations will not suffice (id. at 239); Fowler at 113 ; Shariff at 690; Stoianoff at 526). Indeed, when the allegations in a complaint are vague or conclusory, dismissal for failure to state a cause of action is warranted (Schuckman Realty, Inc. at 401 ; O'Riordan at 800 ). In addition, as relevant here, in order to establish a cause of action for legal malpractice a plaintiff must plead and ultimately prove that his/her attorney was negligent in the representation provided to the plaintiff, that the negligence was the proximate cause of the plaintiff's damages, that but for the attorney's alleged malpractice, the plaintiff would have prevailed in the underlying action, and actual and ascertainable damages (Franklin at 221; Zeitlin at 510; Marshall at 728; Fidler at 964). To that end, conclusory allegations of damages predicated on speculation are generally insufficient to support a malpractice action, and warrant [*18]dismissal (Mid City Elec. Corp. at 649; Lam at 716; Denisco at 991; Kaplan at 452; Bua at 848). Generally, the absence of actual damages is fatal (Ressis at 567). That said, while a motion to dismiss the complaint need not allege actual damages, at the very least facts must be pleaded, which if true, allow damages to be reasonably inferred (Fielding at 442; Mackey Reed Elec., Inc. at 823).
Here, a review of the complaint reveals that with respect to damages, plaintiffs allege that defendants' actions have caused "Sebco and the Property Owners ongoing damage," that defendants' other business interests "created conflicts of interest for Siegel and S&R [which] resulted in damage to Sebco," and that as a result of defendants' conduct plaintiffs "have incurred (and continue to incur to this day) actual and consequential damages to be proven at trial." As a matter of law, the foregoing allegations of damages are so devoid and bereft of facts so as to render them vague, conclusory and speculative. Indeed, the foregoing allegations are so vague, conclusory, and bereft of any specific claim of pecuniary harm, that it is impossible to reasonably infer plaintiffs' actual or expected damages. Accordingly, the lion's share of plaintiffs' legal malpractice claim fails to state a cause of action and must be dismissed pursuant to CPLR § 3211(a)(7). 
Second, the foregoing is similarly fatal for the additional reason that with the exception of the Sebco IV project, the entirety of plaintiffs' legal malpractice claim is premised on conflicts of interests arising from defendants' dual representation - namely, the representation of clients adverse to plaintiffs in matters in which defendants also represented plaintiffs. The foregoing circumstances will only give rise to an actionable claim for legal malpractice when a plaintiff can establish his/her damages. Again, in New York, violations of the Rules of Professional Conduct, do not, absent more, provide a basis for a legal malpractice claim against an attorney or firm (Doscher at 699; Cohen at 513; Kallman at 1096; Arkin Kaplan LLP at 366; Weintraub at 254). Hence, a conflict of interest, even if it amounts to a violation of the Code of Professional Responsibility, without more, will not give rise to claim of legal malpractice (Sumo Container Sta., Inc. at 170; Lavanant at 451). Only if the conflict of interest amounts to a breach of the duty of care and it is alleged or proven that damages were proximately caused by the breach, then such conflict is tantamount to legal malpractice (Esposito at 945; Tabner at 610). Here then, where the complaint fails to adequately plead plaintiffs' damages, the already tenuous theory of liability fails for this additional.
Third, with respect to plaintiffs claim that defendants were negligent in failing to apprise Sebco that refinancing for the Sebco IV project required the consent of Sebco IV's limited partners, the complaint alleges that 2018 Sebco undertook a project, acting as sponsor and developer, whereby it would develop and rehabilitate the property owned by Sebco IV. In furtherance thereof, Sebco expended significant finances and labor for pre-development on the project. Defendants acted as Sebco's attorney on the project and were required to and did provide legal advice in connection therewith. However, in 2022, after defendants were terminated, they apprised Sebco, albeit in an effort to thwart Sebco's effort with respect to the Sebco IV project, that Sebco IV could not obtain refinancing absent consent of Sebco IV's limited partners. This, plaintiffs allege, resulted in the loss of Sebco's investment in the project. It is alleged that the only reason that Sebco undertook the foregoing project was based on defendants' legal advice in 2015 when defendants wrongly advised Sebco that the consent of the limited partners would not [*19]be required to obtain financing in the Sebco IV project. It is alleged that this constituted malpractice and that had Sebco been properly advised, it would not have undertaken the project.
Unlike the other allegations of malpractice, the foregoing allegation of legal malpractice, albeit inartfully, pleads all the elements required for a such claim. Indeed, to the extent that plaintiffs allege the total loss of Sebco's investment and the loss of time and finances, it is the only instance of alleged malpractice where the damages alleged are not so vague and conclusory that the alleged actual and expected damages canbe reasonably inferred. Nevertheless, the claim is barred by the applicable statute of limitations. 
A defendant seeking dismissal of an action pursuant to CPLR § 3211(a)(5) as barred by the applicable statute of limitations bears the burden of establishing that the applicable statute of limitations expired prior to the commencement of the action (Swift at 687; Gravel at 620; Duran at 348).
Pursuant to CPLR § 214(6) the statute of limitations for claims of non-medical malpractice is three years from the time the cause of action accrues, irrespective of whether the claim is premised on contract or tort. Moreover, a cause of action for legal malpractice accrues and the statute of limitations begins to run on the date the alleged malpractice occurs (Shumsky at 166 ; Glamm at 93). Under the doctrine of continuous representation, however, if the attorney continues to represent the client in the underlying action, meaning for the same subject matter alleged to have given rise to the malpractice, the statute of limitations is tolled until such time the representation is terminated (Glam at 93; CLP Leasing Co., LP at 227; Parlato at 114-15). Stated differently, the continuous representation doctrine applies so as to toll the statute of limitations for a claim of legal malpractice if there is "indicia of an ongoing, continuous developing, and dependant relationship between the client an attorney" (Luk Lamellen U. Kupplungbau GmbH at 506; see Ainbinder at 494 and "the continuous representation [is] in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship." (Zaref at 347-348 [internal citations omitted]).
Here, the alleged malpractice in connection with the Sebco IV project was defendants' misinformation regarding the need for consent from the limited partners, which is alleged to have occurred in 2015 [FN1]
. Thus, this claim accrued in 2015 and the applicable three year statute of limitations expired in 2018. To the extent that this action was commenced in 2023, eight years after the alleged malpractice occurred and the cause of action accrued, it is barred by the applicable statute of limitations. Contrary to plaintiffs assertion, the continuous representation doctrine is inapplicable to the instant claim. While the complaint alleges that "[p]rior to defendants' termination as SEBCO's counsel in 2022, it appears that these various entities were working cooperatively towards the common goal of completing the Sebco IV Project . . . [the] spirit of cooperation suddenly changed after SEBCO terminated Siegel's representation," that as a result of their termination, defendants "threw up one obstacle after another," including "that the refinancing required the consent of the limited partners of Sebco IV Entity." The foregoing [*20]makes it clear that while plaintiffs discovered the alleged malpractice in 2022, the same occurred in 2015, such that it was then the cause of action accrued. Moreover, while counsel for plaintiffs allege that defendants' representation of plaintiffs regarding the Sebco IV project was continuous and coterminous with defendants' discharge in 2022, the complaint does not make those allegations. At best, the complaint indicates that defendants "acted as SEBCO's outside general counsel," advising Sebco on a myriad of different issues until they were terminated. This is the very kind of relationship, which, unless express facts indicate otherwise, precludes the applicability of the continuous representation doctrine (CLP Leasing Co., LP at 227["Court held that continuous representation doctrine did not apply because "the documentation they submitted showed only the continuation of a general professional relationship, and not an ongoing representation concerning the specific matters from which their claims arose."]]; Parlato at 114-115 ["Here, although plaintiffs claim that Soule had a continuous professional relationship with them through some point in 1996, Soule's advice related to a series of discrete and severable transactions. The complaint was therefore correctly dismissed to the extent it asserts claims by either plaintiff based on transactions that occurred prior to December 28, 1993."]).
Plaintiff's claim for breach of fiduciary duty is dismissed pursuant to CPLR § 3211(a)(7). Significantly, irrespective of whether said breach arose from defendants' representation of plaintiffs or defendants' alleged post-termination conduct, to the extent that the alleged breach of fiduciary duty is premised on claimed damages, which are vague and conclusory, the complaint fails to sufficiently plead damages. Accordingly, the complaint fails to state a cause of action for breach of fiduciary duty. 
As noted above, the proponent of a claim for breach of fiduciary duty must allege (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages caused by defendant's misconduct (Besen at 549; Vil. of Kiryas Joel at 898; Varveris at 1059; Burry at 700). Notably, when an attorney discloses a client's confidential information, which was obtained by virtue of the attorney-client relationship, such conduct gives rise to a claim for breach of fiduciary duty (Napoli v New York Post, 175 AD3d 433, 435 [1st Dept 2019] ["Furthermore, plaintiff's allegations that Marc Bern disclosed confidential information obtained in the course of his representation of her and disclosed documents in violation of the attorney-client privilege state a cause of action against him for breach of fiduciary duty. The court correctly found that plaintiff's allegations, along with two affidavits supporting her claim that Bern represented her sufficiently pleaded the requisite elements of a breach of fiduciary duty claim" (internal citations omitted).]; Keller v Loews Corp., 69 AD3d 451, 451 [1st Dept 2010]). In addition to the well settled-rule that any allegations in the complaint which are vague and conclusory warrant dismissal for failure to state a cause of action (Schuckman Realty, Inc. at 401; O'Riordan at 800), the proponent of an action alleging breach of fiduciary duty is held to the heightened pleading requirement promulgated by CPLR § 3016(b), such that where the damages alleged are threadbare and conclusory, the complaint must be dismissed (Mann at 824; see Theaprin Pharm., Inc. at 1255; Swartz at 823; Palmetto Partners, L.P. at 808).
Here, the same inadequate claims of damages discussed above with respect to the cause of action for legal malpractice are the very same damages alleged in support of all claims in the complaint. Accordingly and again, these conclusory and vague allegations of damages, bereft of any specific claim of pecuniary harm, are insufficient to state a cause of action for breach of [*21]fiduciary duty.
Plaintiff's cause of action for tortious interference with prospective business relations is dismissed pursuant to CPLR § 3211(a)(7). Significantly, the complaint fails to plead that the defendants' alleged interference was solely motivated by malice or that defendants' conduct was criminal or independently tortious. 
The proponent of a claim for tortious interference with prospective business relations must establish (1) a plaintiff's business relationship with a third-party; (2) a defendant's knowledge of the relationship and the intentional interference with the same; (3) that the defendant's conduct arises solely from malice or that the defendant's conduct is improper, or illegal, such that it amounts to a crime or an independent tort; and (4) that defendant's conduct injured the plaintiff's relationship with the third-party (Stuart's, LLC at 713; Amaranth LLC at 47; see Carvel Corp. at 189. Moreover, when the interference alleged is merely with prospective business relations, as opposed to a contract, liability is premised on defendant's use of wrongful and or illegal means (Guard-Life Corp. at 193-194; Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 58)5, or where malice is the sole motivating factor (Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 585; Devash LLC at 79; Advanced Glob. Tech., LLC at 318. Indeed, "[c]onduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations" (Carvel Corp. at 190), and conduct is not wrongful unless it includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" (id. at 191; Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 586). Notably, where the complaint evinces that a defendant's actions were motivated by normal economic interest as opposed to malice, it fails to state a cause of action for tortious interference with prospective business relations (Devash LLC at 318; Advanced Glob. Tech., LLC at 318). The same is true when the complaint fails to allege that a defendant's conduct was directed at a third-party as opposed to the plaintiff (Carvel Corp. at 192; Devash LLC at 318).
Here, it bears noting that the complaint is unfortunately, inartfully drafted, such that it reads more like an airing of grievances akin to a rant, as opposed to what it should be - a carefully worded and drafted document organized to succinctly support each cause of action and limited only to the information relevant thereto. Indeed, it bears repeating that in any action, a party should endeavor to be concise beyond the legally require language, should adopt a "less is more" style of pleading. As the court in Isaacs v Washougal Clothing Co. (233 AD 568 [4th Dept 1931]) noted, more than 90 years ago,
[t]he court should not be compelled to wade through a mass of verbiage and superfluous matter, in order to pick out an allegation here and there which, pieced together with other statements taken from another part of the complaint, will state a cause of action. The time of the court should not be taken in a prolonged study of a long, tiresome, tedious, prolix, involved, and loosely drawn complaint in an effort to save it
(id. at 572; see also Safer Beef Co. v N. Boneless Beef Inc., 15 AD2d 479, 479 [1st Dept 1961]).
Nevertheless, with respect to the instant cause of action, other than asserting that "SEBCO and the Property Owners have had longstanding relationships with numerous agencies, lenders, investors, and other third parties who participate in the creation and preservation of low-income housing for New Yorkers," the only two entities which the complaint identifies in [*22]relation to this claim are HUD and St. Barnabas. Specifically, with respect to St. Barnabas, for which the complaint never identifies the precise nature of the relationship between the parties, the complaint alleges that on March 15, 2023, defendants sent St. Barnabas a letter informing the latter that the former had notified HUD and others not to allow any agency associated with SG to manage any properties. In addition, the letter directs St. Barnabas to the lawsuit previously filed by BMA against SG and others, and directed St. Barnabas's attention to newspaper articles, whose content, beyond assertions that they were false, is not described in the complaint. With respect to HUD, the complaint alleges that on April 24, 2023, Sebco participated in a conversation with HUD, wherein HUD expressed concern about the issues between BMA and Sebco as a result of conversations HUD had with defendants. As a result of the foregoing, HUD indicated that with respect to some properties, which Sebco wanted to manage, HUD wanted them managed by another company. However, the interference alleged, beyond an assertion that it involved false conversations, fails to state a cause of action. First, since Siegel is associated with BMA, which the complaint alleges is also a management company controlled by Siegel, who conceivably wanted as much business from HUD as possible, the complaint evinces that defendants' motivation for the alleged interference was just as likely economic self interest as it was alleged harm to Sebco (Devash LLC at 318; Advanced Glob. Tech., LLC at 318). Accordingly, the complaint fails to state a cause of action for this reason alone. Nevertheless, the complaint also fails to state a cause of action since it is never alleged that defendants' behavior was solely motivated by malice, was otherwise criminal or independently tortious (Carvel Corp. at 190). To be sure, there is no allegation as required that defendants engaged in physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and or some degree of economic pressure (Carvel Corp. at 191; Stuart's, LLC at 713; Law Offices of Ira H. Leibowitz at 586). To be sure, the law suit alleged to have been brought in federal court was, in fact, alleged to have been brought and then discontinued. Accordingly the foregoing is not, as alleged, a falsehood. Moreover, it is never alleged that the articles alleged to have been brought to HUD's attention were authored by defendants, so as to, as intimated, constitute the sharing of false and injurious information. Moreover, and quite significant, the allegation that defendants conveyed false information is not, by itself, tantamount to an actionable tort [FN2]
.Defendants' motion [*23]seeking to dismiss plaintiffs' cause of action for declaratory judgment pursuant to CPLR § 3211(a)(7) is granted. Significantly, here, while the complaint contains conclusory allegations regarding defendants' continued representation of parties adverse to plaintiffs in matters where defendants' formerly represented plaintiffs, the failure to specify the exact matters where the foregoing is true, coupled with the allegations in the complaint which appear to conflate Siegel's control of entities with defendants' legal representation of the same, results in the complaint's failure to state a cause of action.
Generally, a declaratory judgment is intended to declare the respective legal rights of the parties based on specific facts and is not intended to declare findings of fact (Touro College at 679-680; Thome at 100). Stated differently, the general purpose of a declaratory judgment is to quiet or stabilize an uncertain or disputed jural relation concerning present or prospective obligations (James at 305; Touro College at 679). Thus, a declaratory judgment requires a justiciable controversy, in which the plaintiff has an interest sufficient to constitute standing to maintain the action and that such "controversy involve present, rather than hypothetical, contingent or remote, prejudice to plaintiffs (Am. Ins. Ass'n at 383; Touro College at 680).
Here, the complaint alleges that in addition to representing "SEBCO and the Property Owners, Defendants also represented and counseled many other entities and/or individuals concerning the same transactions and matters that Defendants also represented SEBCO." Specifically, the complaint alleges that defendants represented BMA, Fox, Sebco IV and FLG, and that the foregoing dual representation "created" a conflict of interest. Thereafter, the complaint alleges that Sebco terminated its lease with Fox, that it abandoned the Sebco IV project, and that it is no longer affiliated or sharing space with BMA, which plaintiff is suing because BMA has allegedly refused to relinquish its management of certain properties, over which Sebco has been granted consent to manage. Lastly, the complaint, in support of the cause of action for declaratory judgment, alleges that defedants must cease representing BMA, Fox, GG and FLG in matters adverse to plaintiffs, where said matters relate to defendants' prior representation of plaintiffs.
To the extent that a declaratory judgment is appropriate to quiet or stabilize an uncertain or disputed jural relation concerning present or prospective obligations (James at 305; Touro College at 679), here, where the complaint evinces that plaintiffs are no longer affiliated with Fox, BMA, GG, FLG, or Sebco IV, the complaint points to no existing matter where defendants' representation of these parties ought to be precluded on the basis of defendants' prior representation of plaintiffs'. Moreover, while it is alleged that Sebco has sued BMA, the allegation is that Siegel controls BMA and not that defendants represent BMA in that action. Therefore, the only pending matter alleged in the complaint, involving a party adverse to Sebco and where defendants' representation of said party is creating a justiciable conflict warranting a declaratory judgment, is one where defendants' involvement is not as counsel. Accordingly, the complaint fails to plead a cause of action for declaratory judgment. 
Defendants motion seeking to dismiss the cause of action for replevin, asserting that the claim is moot is denied. Significantly, the thrust of this entire motion, is dismissal pursuant to CPLR § 3211. Thus, against that backdrop, the complaint states a cause of action for replevin and defendants submit no legally cognizable documentary evidence establishing their claim that all the items sought by plaintiffs have been returned.
In an action for replevin, the plaintiff bears the burden of establishing that he/she has a superior possessory right to the chattel than that of the defendant (Batsidis at 343; Pivar at 213. Accordingly, "[t]o state a cause of action for replevin, a plaintiff must establish a superior possessory right to property in a defendant's possession" (Reif at 120).
Here, the complaint alleges that defendants served as Sebco's "counsel for decades," such that they " possess extensive files and materials relating to SEBCO's operations, corporate matters, transactions, and other legal matters." The complaint further alleges that Sebco has demanded such files, that defendants have refused to return them, and that as to the files, plaintiffs have a right and an interest in the files. 
The foregoing sufficiently states a cause of action for replevin. To the extent that defendants assert that the complaint fails to state a cause of action, such contention is without merit. Moreover, defendants' assertion that defendants stand ready to return the files sought, does not warrant dismissal of the instant cause of action.
First, as noted above, on a motion to dismiss, documentary evidence means judicial records, judgments, orders, contracts, deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Estate of Webster at *1). Accordingly, an assertion by counsel is clearly insufficient to warrant dismissal of an action pursuant to CPLR § 3211. Second, a willingness to return the documents sought is not tantamount to an assertion that all documents undergirding the claim have been returned. To be sure, it is only the latter that constitutes compliance sufficient to render an action moot.
In opposition to the instant motion, beyond the replevin claim, plaintiffs submit no evidence sufficient to preclude dismissal of all other causes of action. Nor do the arguments proffered by them avail them. 
For example, with respect to the legal malpractice claim, plaintiffs rely on Caruso, Caruso & Branda, P.C. v Hirsch (41 AD3d 407 [2d Dept 2007]), asserting that pursuant thereto, "all that is required to survive a motion to dismiss is allegations from which damages attributable to the defendant's alleged malpractice might be reasonably inferred." (id. at 410). Not only is the foregoing true, but it is not at variance with the jurisprudence cited by this Court. Here, however, the Court's holding, with the exception of the Sebco IV project, is the complaint's wholesale failure to allege anything more than the fact that damages, to be ascertained at trial, were incurred. Merely asserting that damages were incurred without specifying what those damages were, and whether they were pecuniary is simply fatal. Indeed, in Caruso, Caruso & Branda, P.C., dismissal of the complaint was denied because as to damages, plaintiff pleaded facts from which pecuniary loss could be inferred (id. at 410 ["The proposed amended pleading met this standard by alleging that the filing of a notice of pendency would have provided constructive notice of Hirsch's claims in the divorce action and thereby prevented the eight properties from becoming part of the estates in bankruptcy of the Trust Entities and/or of Hirsch's former [*24]husband ."]). Thus, unlike the records here, in that case, the pecuniary damages alleged therein were ascertainable because the complaint pleaded specific facts to support them.
To the extent that plaintiffs aver that the continuous representation doctrine avails them, as discussed above, it would only avail them with respect to the Sebco IV project, since it is the only claim for legal malpractice which sufficiently pleads damages. However, plaintiffs' counsel's assertions are not a substitute for allegations in the complaint and are not tantamount to an affidavit to cure pleading defects in the complaint (Cron at 366 [In opposition to a motion to dismiss for failure to state a cause of action, a plaintiff may submit affidavits to remedy defects in the complaint, and if an affidavit is submitted for that purpose, it shall be given its most favorable intendment]). Here, contrary to counsel's assertion, the malpractice arising from the Sebco IV project accrued in 2015, when it is alleged that Sebco was provided with incorrect legal advice, without which, it would not have undertaken the Sebco IV project. It is then alleged that sometime thereafter, the Sebco IV project failed and that damages resulted therefrom. Thus, the foregoing claim accrued in 2015 and at best the complaint asserts that defendants continued to provide legal advice to Sebco through 2018, when they changed their position. Thus, even if the instant claim accrued in 2018, by 2023, five years later, when this action was commenced, the statute of limitations had expired. For purposes of continuous representation, that defendants continued to advice plaintiffs on unrelated matters does not avail them.
With respect to the claim for tortious interference with business relations, Long Is. Thoracic Surgery, P.C. v Bldg. Serv. 32BJ Health Fund (215 AD3d 942 [2d Dept 2023]), does not avail plaintiffs. To be sure, as noted by this Court, at best, here, the complaint only sufficiently pleads the foregoing on alleged false statements made by defendants to HUD, which then resulted in the denial by HUD of plaintiffs' request to manage some properties. As the Court noted, unlike the plaintiffs in Long Is. Thoracic Surgery, P.C., who in addition to asserting a claim for tortious interference with business relations also sufficiently pleaded a claim for defamation, here, the latter claim was neither pleaded nor claimed. Thus, contrary to plaintiffs' assertion, unlike in Long Is. Thoracic Surgery, P.C., defendants' conduct was not independently tortious so as to plead a cause of action for tortious interference with business relations. It is hereby
ORDERED that with the exception of the cause of action for replevin the complaint be dismissed. It is further
ORDERED that all causes of action asserted by EC and Filomena in the complaint be dismissed. It is further
ORDERED that defendants serve a copy of this Decision and Order with Notice of Entry upon plaintiffs within thirty (30) days hereof.
Dated: March 20, 2024
Bronx, New York
FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1:Here, while not dispositive, it bears noting that defendants mistakenly aver that the legal malpractice claim arising from the Sebco IV project accrued in 2018, when the alleged malpractice was discovered. 

Footnote 2:An action for defamation is one where a defendant is accused of making a
false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society
(Foster v Churchill, 87 NY2d 744, 751 (1996); see, Manfredonia v Wiess, 37 AD3d 286 [1st Dept 2007]; Dillon v City of New York, 261 AD2d 34, 37-38 [1st Dept 1999]; Fairley v Peekskill Star Corporation, 83 AD2d 294, 296 [2d Dept 1981]). The elements of an action for defamation are (1) the publishing of a false statement to a third party; (2) publishing said statement without authorization or privilege; (3) fault, judged at a minimum by a negligence standard; and (4) special harm or defamation per se (Dillon at 38; Salvatore v Kumar, 45 AD3d 560, 563 [2d Dept 2007]). Statements are defamatory per se when they charge plaintiff with a serious crime, tend to injure another in plaintiff's trade, business or profession, allege plaintiff has a loathsome disease, or impute unchastity to a woman (Liberman v Gelstein, 80 NY2d 429, 435 [1992]). Here, the complaint is bereft of any allegations sufficient to allege that the statements made by defendants were defamatory and therefore independently tortious.